JAMES W. SWAYNE ET AL. v. LONE ACRE OIL COMPANY.

No. 1382. Decided April 27, 1905.

**1.—Descent—Life Estate—Common Law.**

The life estate in a one-third interest in the lands of the husband inherited by the surviving wife (Rev. Stats., art. 1698) was of the quality and subject to the incidents of life estates at the common law. Rev. Stats., art. 3258. (Pp. 605, 606.)

**2.—Same—Impeachment for Waste.**

The life estate inherited by the wife under Rev. Stats., art 1698, like other life estates created by operation of law, was, at common law, impeachable for waste though such estates created by contract were not. (Pp. 606-608.)

**3.—Same—Waste—Opening Mines—Oil.**

The tenant of a life estate impeachable for waste has no right to remove minerals from the land except from mines opened before the creation of his estate, and oil is a mineral subject to this rule. (P. 607.)

4.—Tenant in Common for Life—Proceeds of Mining by Cotenant and Re-
mainderman.

The rights of the holder of a life estate in an undivided interest in
land, where the cotenants, holding the remaining interest in fee and en-
titled to the remainder on termination of the life estate, and holding exclu-
sive possession, had opened oil wells and mined and marketed petroleum
from the land, did not, in any aspect of the case, extend to an absolute
ownership of any part of the proceeds of the oil so mined; the right of the
life tenant being to the use and not to the corpus of the estate, he could
not complain of a judgment allowing him interest during the term of his
estate, upon such part of the proceeds of the oil mined as was proportionate
to his. interest.   (P. 608.)

Error to the Court of Civil Appeals for the First District, in an appeal
from Jefferson County.

Swayne and others sued the Lone Acre Oil Company and recovered a
judgment which was modified on appeal by defendant.  Appellees then
obtained writ of error.

*Amos L. Beaty, R. R. Hazelwood, W. D. Gordon,* and *E. C. McLean,*
for plaintiff in error.—Appellees' estate is not confined to the surface
of the land but includes the minerals beneath, and the case must be ad-
judged accordingly.  Rev. Stats., art 1689; Benavides v. Hunt, 79 Texas,
383; Koen v. Bartlett (W. Va.), 31 Law. Rep. Ann., 128; Seager v.
McCabe (Mich.), 16 Law. Rep. Ann., 247; Blakley v. Marshall, 174
Pa. St., 425; Wilson v. Hughes (W. Va.), 39 Law. Rep. Ann., 292; Mac-
Swinney on Mines, 32; Tiedman, Real Prop., 2; Coke on Littleton, 4a;
1 Washburn Real Prop., 3; 2 Blackstone Comm., 16-18, 144; Lewis v.
Branthwaite, 2 B. & A., 437.

Since the life estate comes by inheritance and vests solely by operation
of law, appellees, though having only a life estate, might drill for oil
without being guilty of waste, and are consequently entitled to their pro-
portion of the oil produced, less the expenses of producing and market-
ing.  Rev. Stats., art. 1689; Higgins O. & F. Co. v. Snow, 113 Fed.
Rep., 439; Seager v. McCabe (Mich), 16 Law. Rep. Ann., 247; Bran-
bridge on Law of Mining, 55; 4 Wait's Actions and Defenses, 424;
Bryan, Law of Petroleum and Natural Gas.

Appellant having drilled wells and devoted the land to mining pur-
poses, appellees are entitled to their proportion of the proceeds of the
oil, after deducting the expenses of producing and marketing, regardless
of whether they would have been allowed to sink wells and extract oil.
Higgins O. & F. Co. v. Snow, 113 Fed. Rep., 439; Koen v. Bartlett (W.
Va.), 31 Law. Rep. Ann., 128; Gillum v. Railway Co., 5 Texas Civ.
App., 339; Lenfers v. Henke (Ill.), 24 Am. Rep., 263; Priddy v. Griffith
(Ill.), 37 N. E. Rep., 999; Allen v. McCoy, 8 Hammond (Ohio), 418.

Appellant, in disregard of the rights of Mrs. Snow, in open repudia-
tion thereof, drilled wells and has continued to produce oil, and to appro-
priate the entire proceeds to its own use and benefit.  Being, as counsel
admit, cotenants with Mrs. Snow, the oil was lawfully extracted and
mining lawfully carried on.  When minerals are lawfully extracted they

are profits and not corpus. They can not be profits as to the one and corpus to the other. When severed the oil becomes eo instanti personalty, like annual crops when gathered; mining is thus a lawful mode of use and enjoyment, made so by the remaindermen. They proclaim it to the world; they affirm it by their acts.

The oil in situ is land; the growing grass is likewise land; when wrongfully severed it remains land, and may be followed and recovered in the hands of an innocent purchaser. But when cotenants devote the oil land to mining purposes, or convert the prairie into a meadow, and mine the oil or harvest the hay, they are estopped to say that the oil extracted or the hay harvested are still a part of the land. They thereby make it a profit of the land.

If profit for the cotenant in remainder, and made so by him, it must be and remain likewise profit for the cotenant whose estate is for life. If it would be lawful for Mrs. Snow to work mines that were opened or contracted to be opened when her estate commenced, and that she might do so is admitted, then why may she not to the same extent participate in the revenue of mines opened by her adversaries in repudiation of her rights during the life estate? They have elected, without consulting her, to destroy all other uses of the oil bearing land, not waiting for a court of equity to handle the matter. Have they not waived any objections they might have had to the oil being mined? Shall they be permitted now to say that mining is not a proper mode of using the land, or that the minerals are not profits rather than corpus?

The life estate cast by the Texas statute does not carry the inherent restrictions as to use that hedge about conventional life estates or dower and curtesy, and is not impeachable for waste.

The test of the life tenant's right to share in the proceeds of the oil wells is not the character or status of the land but character or status of the use to which the land is put; and if mining is lawful use, this use and not the product itself determines the life tenant's interest in the proceeds.

When the remainderman as such and as cotenant entered upon the land before partition and without the joinder of the life tenant and drilled oil wells and devoted the hitherto unused land to mining purposes thereby destroying all other possible uses, mining thereby became a lawful mode of use, and the proceeds when severed and sold became a product of the land and the accounting is due on a basis of profit and not corpus.

*Smith, Crawford & Sonfield, Proctors, Greer, Greer, Nall & Parker,* and *Crane, Greer & Wharton,* for defendants in error.—The common law was adopted as the rule of property in Texas in 1840, and has been m force ever since, and was in force in 1848, when the statute casting an estate for life on the surviving husband or wife was enacted. Therefore, the estate conferred by the statute not being further defined than "an estate for life," the character of the estate was such as had been fixed and construed by the common law, it will be presumed that the Legislature

used the term according to its common law significance, and the court will so construe it. Hartley's Dig., art 127; Black on Interp. of Laws, 130; McCool v. Smith, 1 Black U. S., 459; Federal case No. 15494; United States v. Trans-Missouri Ass'n, 7 C. C. A., 58; Kircher v. Murray, 60 Fed. Rep., 50; Boone v. Hulsey, 71 Texas, 189; Babb v. Carroll, 21 Texas, 771.

Where the statute confers upon the surviving wife "an estate for life in one-third of the lands of her deceased husband," such estate is no greater than that of a life tenant at common law, and it is closely analogous to, and governed by the same rules as govern the estate of the tenant in dower, after assignment of dower. The use of the word "land" is no more comprehensive, if indeed it is equally as comprehensive, as the words "lands and tenements," whereof the widow was endowed at common law. And the incidents to the estate of a tenant for life are the same, whether the estate be conventional—created by acts of the parties—or legal—dower and curtesy. Carroll v. Carroll, 20 Texas, 744; Hendrix v. McBeth (Ind.), 28 Am. Rep., 680; Tiedman on Real Prop., sec. 72; 1 Washburn on Real Prop., 4 ed., p. 139.

A tenant for life has only the right to full enjoyment and use of the land and all its (temporary) profits during his estate therein. Such right is a possessory right only. He is entitled to none but temporary profits, and is prohibited from doing anything with the land which would constitute waste. 2 Blackstone's Com., 122; Tiedman on Real Prop., sec. 72; Ft. Worth & N. O. Ry. Co. v. Pearce, 75 Texas, 281-284; Cook v. Caswell, 81 Texas, 678-684; Barnsdall v. Boley, 119 Fed. Rep., 195.

Waste is an unlawful act or omission of duty which results in permanent injury to the inheritance, and any act which does damage to the reversioner and is not one of the ordinary uses to which the land is put is waste. Tiedman on Real Prop., secs. 72, 73.

Oil is a mineral; oil in situ is a part of the land—the inheritance. Bryan on Law of Petroleum, p. 21; Brown v. Spilman, 155 U. S., 669; Gerkins v. Kentucky Salt Co. (Ky.), 66 Am. St. Rep., 370; Peoples Gas Co. v. Tyner (Ind.), 31 Am. St. Rep., 436; Williamson v. Jones (W. Va.), 38 Law. Rep. Ann., 694; Marshall v. Mellon (Pa.), 35 Law. Rep. Ann., 816; Wilson v. Hughes (W. Va.), 39 Law. Rep. Ann., 292.

A tenant for life has no ownership nor interest in minerals underlying the land, unless at the time the life estate is cast, or prior thereto, mines have been opened on the land. Marshall v. Mellon (Pa.), 36 Atl. Rep., 201; Blakeley v. Marshall, 174 Pa. St., 425; Stoughton v. Leigh, 1 Taunt., 402; Coats v. Cheever, 1 Cowan (N. Y.), 460; Williamson v. Jones (W. Va.), 38 Law Rep. Ann., 694; Westmoreland Coal Co.'s Appeal, 85 Pa. St., 344; Gaines v. Mining Co., 33 N. J. Eq., 603; Reed v. Reed, 16 N. J. Eq., 248; Hendrix v. McBeth (Ind.), 28 Am. Rep., 680; Billings v. Taylor, 10 Pick. (Mass.), 460; Gerkins v. Kentucky Salt Co., 39 S. W. Rep., 444; Tiedman on Real Prop., sec. 73-75; Donahue on Pet. and Gas, p. 41, sec. 1; Higgins Oil and Fuel Co. v. Snow, 113 Fed. Rep.,

438, 439; Barnsdall v. Boley, 119 Fed. Rep., 195; Bond v. Godsey (Va.), 39 S. E. Rep., 216; Maher v. Maher (Vt.), 50 Atl. Rep., 1063.

The exceptions to the rule laid down in the preceding proposition are that the life tenant may open mines and acquire an interest in the minerals (1) where the land, by reason of its nature, is not susceptible to any other mode of enjoyment; (2) where the heir or remainderman, before assignment of dower, has rendered the land unfit for other than mineral purposes; (3) where the land has been impressed with the character of mineral land by the owner of the precedent estate, in fee; (4) where the remainderman authorizes the life tenant to open mines (5) where mines are opened by agreement between the life tenant and remainderman. (1) Where the land is valueless for other than mineral purposes. Seager v. McCabe (Mich.), 16 Law. Rep. Ann., 247; Reed v. Reed, 16 N. J. Eq., 248. (2) Where the heir or remainderman before assignment of dower has rendered the land unfit for other than mineral purposes. Lenfers v. Henke (Ill.), 24 Am. Rep., 263. (3) Where the land has been impressed with the character of mineral lands by the owner of the precedent estate in fee. Gaines v. Greenpoint Mining Co., 33 N. J. Eq., 603; Koen v. Bartlett, 31 Law. Rep. Ann., 128-130; Priddy v. Griffith, 150 Ill., 560. (4) Where the remainderman authorizes life tenant. 28 Am. and Eng. Enc. of Law, 892. (5) Where the mines are opened by agreement between life tenant and remainderman. Blakley v. Marshall (Pa.), 34 Atl. Rep., 564; Wilson v. Hughes (W. Va.), 39 Law. Rep. Ann., 292.

Upon the death of the husband, the wife, under the statutes of Texas, becomes instantly vested with her life estate, and is entitled to enjoy possession thereof as a tenant in common with her children, and may have partition. In this respect the wife differs from the doweress at common law, who at the death of her husband has a consummate right to an estate for life, which does not become an estate until set out or assigned to her, from which time she has a life estate with all the rights, incidents and disabilities which pertain to such estate. (1) The estate vests immediately. Rev. Stats. of Texas, Art. 1869; Floyd v. Terrell, 60 Texas, 284; Ansley v. Baker, 14 Texas, 607. (2) The wife becomes tenant in common with her children. Rev. Stats. of Texas, art. 3606, 3623 and 3632; Akin v. Jefferson, 65 Texas, 142; Ross v. Armstrong, 25 Texas Supp., 371; Peterson v. Fowler, 73 Texas, 527; Freeman on Cotenancy and Partition, sec. 108. (3) Each tenant in common may enjoy possession of the entire estate per mi et per tout. Neil v. Shackleford, 45 Texas, 131; Akin v. Jefferson, 65 Texas, 142; Boone v. Knox, 80 Texas, 642; Osborn v. Osborn, 62 Texas, 495; Gillum et al. v. St. L. A. & T. Ry. Co., 5 Texas Civ. App., 339. (4) Tenant for life may have partition. Tieman v. Baker, 63 Texas, 641. (5) Dower defined and explained. Tiedman on Real Prop., sec. 115. (6) Doweress does not become tenant in common, and has no right to partition until after assignment. Grossman v. Lamber, 29 Ind., 618; Walker v. Rand (Ill.), 22 N. E. Rep., 1006; Van Name v. Van Name, 23 How. Prac., 247; 10 Am. and Eng. Enc. of Law, 2 ed., 146.

The survivor under out statute becomes a tenant in common with the children, and others interested in the possession. All are entitled to possession per mi et per tout. In this respect a survivor differs from a life tenant in entirety, who alone is entitled to possession during his life, in which case it would be trespass for the remainderman to enter. Same authorities.

The defendant being the owner in fee simple of seventeen-eighteenths of the lands with present right of possession, and being the owner of the other one-eighteenth in remainder, it was not unlawful for it to enter upon the premises and mine upon a part thereof. The life tenant having no interest in the minerals, and there being a sufficient amount of land from which the life estate of Mrs. Snow can be satisfied, the entry was without detriment to the said life estate, and this action on the part of the owner in fee, gives no right or interest in the minerals to the life tenant. Same authorities.

Where one tenant in common enters upon the land and makes improvements upon part thereof, on partition the part thus improved will be set apart to such tenant, and sales of portions of lands held by tenants in common by metes and bounds will in partition be set aside to them or their alienees, and equity will partition according to the value and condition of the estate at the time of such conveyance by the cotenant. All subject to the condition however that this can be done without injury to the other cotenants. (1) Improvements made by a tenant in common set aside to him. Thompson v. Jones, 77 Texas, 630; Boone v. Knox, 80 Texas, 644; Tevis v. Collier, 84 Texas, 641. (2) Sales by metes and bounds made to tenants in common will be assigned to alienees on partition. Arnold v. Cauble, 49 Texas, 532; Camoron v. Thurmond, 56 Texas, 33; Peak v. Swindle, 68 Texas, 242; Maverick v. Burney, 88 Texas, 560; Young v. Edwards, 10 Law. Rep. Ann., 55; Osborn v. Osborn, 62 Texas, 495; Freeman on Co-Tenancy, sec. 509; 17 Am. and Eng. Enc. of Law, p. 771 (Note 1), 772 (Note 2). (3) Equity will partition according to value and condition of the estate at the time of the conveyance by cotenants. Toomer v. Toomer, 1 Murphy (N. C.), 93; Tucker v. Whittlesey, 74 Wis., 74.

The life tenant's possesion and right where no mines have been opened when the life estate is cast, is only in the surface. Partition made between the life tenant and the heirs will therefore be of the surface only. As to the minerals and other portions of the inheritance, there is in contemplation of law a separate and distinct estate, and the life tenant having no interest therein can not demand any part thereof on partition. Especially is it true that such life tenant can not demand an interest in mines opened by her cotenants, who are owners of the fee and in lawful possession in common with her of the surface, but owning the inheritance absolutely and unconditionally. Benavides v. Hunt, 79 Texas, 390; Ames v. Ames, 160 Ill., 599; Caldwell v. Fulton, 72 Am. Dec., 760; Caldwell v. Copeland, 78 Am. Dec., 436.

If plaintiffs, holders of the life estate of Mrs. Snow, are entitled to any share in the oil or other minerals, such right is limited to interest on the investment of the net proceeds of one-eighteenth of the oil produced, because the oil is a part of the land, and under the pleadings in this case there is acquiescence in and consent to the conversion of the land into money, and the life estate in the land being the right to use it during life, the estate in the money into which the land is converted, would be of the use of one-eighteenth of the money, which means interest. Blakley v. Marshall (Pa.), 34 Atl. Rep., 564; Lenfer v. Henke, 24 Am. Rep., 266; Dicken v. Hamer, Dr. and Sm., 284; Wilson v. Hughes (W. Va.), 39 Law. Rep. Ann., 292.

GAINES, CHIEF JUSTICE.—This is an action of trespass to try title, and was brought by the plaintiffs in error to recover of the defendant in error an estate for the life of Annie E. Snow in an undivided one-eighteenth interest in a small parcel of the John A. Veatch survey, and also to recover a like proportion of the net value of certain petroleum, which had been extracted from the land. The plaintiffs recovered in the trial court to the full extent of their claim. Upon appeal, the Court of Civil Appeals affirmed the judgment as to the land, but reversed and modified it as to the recovery for the oil.

The case was tried by the court upon an agreed statement of facts, together with a written stipulation signed by the attorneys for both parties as to the judgment to be rendered, according to the determination of certain questions of law affecting the respective rights of the plaintiffs and the defendant.

We will state the facts necessary to a decision of the case, and this, as briefly as practicable. It appears from the agreed statement that one Andrew A. Veatch inherited from his father a sixth undivided interest in the Veatch survey of 3400 acres in Jefferson County of which his father was the original grantee; that upon the death of Andrew in 1871 his interest descended to his surviving widow Annie E. and their two children; that is to say, one-third to each of the children in fee and a life estate in the other third to the widow with remainder to the children; that she subsequently intermarried with Henry A. Snow, and that by purchase the plaintiffs are the owners of her interest. It also appears that the defendant is the owner of the entire tract in controversy, save the life estate which descended to Mrs. Veatch, the widow of Andrew A. Veatch.

The entire Veatch survey was unoccupied and uninclosed at the death of Andrew Veatch, but was adapted to agricultural and pastoral purposes. No oil wells had been or were being bored upon it at that time. Oil, however, was discovered upon it in 1891, and the part in controversy is now very valuable for the oil which it is producing.

The stipulation of the parties as to the judgment to be rendered is as follows:

"1.  Upon the foregoing statement of facts, judgment shall be rendered by the court on the issue of title as to the land described in plaintiff's petition.

"2.  In case it is held by the court that the plaintiffs have no interest in the land, then of course judgment shall be rendered that the plaintiffs take nothing by their suit and pay the costs thereof.

"3.  In case it shall be held by the court that they are entitled to an estate for the life of said Annie E. Snow in one-eighteenth of the land in controversy without any interest in the oil or its proceeds, then the plaintiffs must get their quantum of land from the Gladys City Oil, Gas and Manufacturing Company, and judgment shall be rendered that the plaintiffs take nothing by their suit and pay the costs thereof.  Likewise if it shall be held that the plaintiffs must take their quantum of the land out of the land owned now by the Gladys City Oil, Gas and Manufacturing Company, or out of that sold by it subsequent to the sale to the defendant.

"4.  If it shall be held by the court that they are entitled to an estate for the life of said Annie E. Snow in one-eighteenth of the land in controversy, and in substance or effect that they are entitled to have one-eighteenth of the net proceeds of the oil that has been extracted and marketed after deducting all expenses of producing and marketing invested or put at interest, and to receive only the interest thereon during her life, the corpus of the fund at her death to belong to the remaindermen, then judgment shall be rendered for the plaintiffs against the defendant for such life estate, and for the value of their interest in the proceeds of oil taken and marketed, to wit, $300.

"5.  If it shall be held by the court that they are entitled to an estate for the life of the said Annie E. Snow in one-eighteenth of the land in controversy, and also to one-eighteenth of the net proceeds of the oil extracted and marketed, after deducting all expenses of producing and marketing, judgment shall in that event be rendered for the plaintiffs against the defendant for such life estate, and for their one-eighteenth of the net proceeds of the oil marketed amounting to $500."

The trial court and the Court of Civil Appeals both held that the plaintiffs in error were entitled to a third interest for life in the land in controversy, and that holding is not questioned by either party.  The real question in the case is, what are the rights of the plaintiffs in error as life tenants in the oil under the land?  The trial court held, that the plaintiffs in error were entitled not only to a one-eighteenth interest for life in the land, but "also to one-eighteenth of the net proceeds of the oil extracted and marketed, after deducting expenses of producing and marketing," and gave judgment as under the fifth paragraph or stipulation.  The Court of Civil Appeals, however, affirmed the hypothesis contained in the fourth paragraph and gave judgment under the stipulation in accordance therewith, namely, for one-eighteenth interest in the land for the life of Mrs. Snow and for $300.

Our statute of descent and distribution declares that: "Where any person having title to an estate of inheritance, real, personal or mixed, shall die intestate as to such estate, and shall have a surviving husband or wife, the estate of such intestate shall descend and pass as follows:

"1. If the deceased have a child or children, or their descendants, the surviving husband or wife shall take one-third of the personal estate, and the balance of such personal estate shall go to the child or children of the deceased and their descendants. The surviving husband or wife shall also be entitled to an estate for life in one-third of the land of the intestate, with remainder to the child or children of the intestate and their descendants." Rev. Stats., art. 1689. The question is, what, under this provision, are the rights of the life tenant in the oil underlying the land, when no attempt had been made to extract it at the time of the descent cast?

It is strenuously insisted on behalf of plaintiffs in error that the common law rules as to the incidents of life estates do not apply to this statute. But we do not concur in the proposition. The statute of January 20, 1840, entitled "An Act to adopt the common law," etc., reads as follows: "The common law of England (so far as it is not inconsistent with the Constitution and laws of this State) shall, together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature." Rev. Stats., art. 3258. Since the passage of that act, which has ever since remained the law and is now incorporated in our Revised Statutes as article 3258, probably few cases have been decided in this court in which the rules of the common law have not been expressly or impliedly applied in the determination of one or more of the questions involved. In some instances it may be that the law as announced by the English courts has not been followed—not for the reason, however, that this court felt at liberty to depart from the rule of the common law—but because the decision or decisions were not regarded of such authority as to fix the rule. So in other instances rules established in England were not regarded as of controlling authority in this State, for the reason that it was thought that the conditions here were so different from those existing in England, that if the conditions in that country had been the same as in this, the ruling there would have been different. At all events, since the adoption of the common law, the courts of this State have adhered to the decisions of the English courts with as much strictness as the courts of the other States, who have the common law, not by adoption, but by inheritance, so to speak. In order to illustrate the strictness in which we have adhered to the common law, we need refer only to the "Rule in Shelley Case"—a rule which has been expressly repealed by a majority of the States of this Union in which the common law prevails—perhaps in every one in which the matter has been of sufficient importance to call the attention of its Legislature to it —a rule founded upon the peculiar policy of the real estate laws of England, and one by reason of its extreme technicality well calculated to

thwart the clear intention of devisors and grantors of real estate. Yet our courts ever since the decision in Hancock v. Butler, 21 Texas, 804, have followed the rule without question, because it was a rule of the common law—the only question discussed being whether the rule was applicable to the case in hand. We conclude, therefore, that we may safely assume that since the adoption of the Act of January 20, 1840, the common law is as much the rule of decision in this State as in those States in which it was the law from the beginning of their political existence.

But is is also insisted that since there was no such life estate, created by the operation of the common law, as the life estate provided for under our statute of descent and distribution, the common law rule does not apply to the estate in question. It is true that the life estates which were devolved upon the husband and the wife respectively under the common law, were the tenancy by the curtesy on part of the husband and in dower on part of the wife. The husband when he became a tenant by the curtesy had a life estate in all the lands of the wife. The dower had to be assigned by the heir before the estate of the widow become fixed to her third. But it does not follow that because the life estate provided by our statute has no exact exemplar in the common law, that the quality and incidents of life estates at common law do not appertain to it.

At common law there were two classes of life estates: first, conventional life estates or those which were created by contract, and second, those which came into existence by operation of law. The former were not impeachable for waste unless expressly made so by the conveyance. The reason assigned for this rule is that it is presumed that if the grantor intended to limit the enjoyment of the estate he would have expressed his intention in the deed. As to the second class of life estates on the other hand, they are, as a general rule, impeachable for waste; that is to say, the tenant for life can not use the property for any purpose which would result in an injury to the inheritance—save those only to which it had been devoted at the time the life estate came into existence. The rights of a tenant of an estate tail after possibility of issue extinct may be an exception to the general rule. As is said by Mr. Cruise: "He is dispunishable for waste, because he continues in by virtue of the livery upon the estate tail; and having once had the power of committing waste, he shall not be deprived of it by the act of God." 1 Greenleaf's Cruise's Dig., 143. On the other hand, speaking of waste, Mr. Washburn says: "This restriction existed at common law in respect to estates in possession of tenants in dower and curtesy, because, as these were created by the law itself, it was thought that the law was bound to protect the reversioner or remainderman from being thereby injured. But where the estate of the tenant was created by act of the parties, it was held that if the grantor or lessor failed to protect the estate by stipulations in his deed or lease, the law was not bound to supply the omission." 1 Washburn on Real Prop., 146. The reason for excepting the tenant in tail

after possibility of issue extinct, from the general rule applicable to life tenants whose estates have been created by operation of law seems rather technical and does not apply to the life estates provided for in our statutes. On the other hand, the reason for holding the tenant by the curtesy or in dower impeachable for waste does so apply and with equal force. We conclude, therefore, that it was the intention of the Legislature in enacting the statute in question to make the estate therein provided for subject to impeachment for waste.

It is too well settled to require a citation of authority, that while it is not waste for a tenant by the curtesy or a tenant in dower to work an open mine, it is waste to open a new mine. In other words, the tenant of a life estate punishable for waste has no right to remove the minerals, when the land had not been devoted to mining purposes before the creation of his estate. Oil before its extraction is a mineral and is a part of the land, and in so far as the question under discussion is concerned, is to be considered like iron, coal, lead or other solid mineral substances.

Such authorities as we have been able to find sustain our view of the effect of our statute. In reference to the descent of real estate where the husband or wife dies, leaving children, the statute of Pennsylvania is the same as that of Texas; that is to say, the surviving spouse takes a third interest for life in the land or lands of the deceased. In the case of the Westmoreland Coal Company's Appeal. 85 Pa. St., 344, the coal company, who claimed under a woman who had inherited a third interest for life in the land from a deceased husband, was guilty of waste in opening mines upon a parcel of land upon which none had been opened at the death of the husband. In the case of Franklin Coal Company v. McMillan, 49 Md.; 549, a life estate in the land had been devised to a Mrs. McMillan with the remainder to her children. She conveyed her right in the land to the coal company. Prior to the death of the testator the coal had been mined for domestic uses, but had never been mined for market. In the suit by the children against the coal company for damages for waste in mining the coal, it was held they were entitled to recover. A like rule was made in the case of Gaines v. Mining Company, 32 N. J. Eq., 86. There it was ruled that the mining company who held the title of a life tenant was liable for waste in mining the land. Presumably the life tenant acquired her estate by operation of law—but that matter does not clearly appear from a report of the case. That case, upon appeal, was reversed by the Court of Errors and Appeals of New Jersey, but upon another point. Same case, 33 N. J. Eq., 603. The ruling of the chancellor upon the question whether the life tenant was impeachable for waste was neither questioned nor decided.

In the case of Seager v. McCabe, 92 Mich., 186, are found expressions not in accordance with our views. But it seems to us that they were not called for in the decision of that case. The statute of Michigan gives to the wife the "use during her natural life of one-third of the lands

whereof her husband was seized" during marriage. The opinion in the case cited shows that the land in controversy was valueless for agricultural or lumbering purposes. It contained a bed of iron ore and that was practically the only use of which it was susceptible. It seems to us that under the Michigan statute it was not difficult to reach the conclusion that the widow, under the circumstances, was entitled to mine the ore, without reference to any rule of the common law.

But in no aspect of this case do we think that the plaintiffs in error have cause of complaint of the judgment of the Court of Civil Appeals. The right of the life tenant is to the use and not to the corpus of the estate; and where his title is in an undivided interest and not in the whole of the land and a sale is ordered for partition, his right in the proceedings is not a part proportionate to the undivided interest in which he has the life estate, but to the interest on that part as long as the life estate may continue to exist. In speaking on this subject in reference to the remaindermen, Chief Justice Marshall in Herbert v. Wren, 7 Cranch, 379, says: "They have a right to insist that, instead of a sum in gross, one-third of the purchase money shall be set apart, and the interest thereof paid annually to the tenant in dower during her life." The rule thus stated is followed in North Carolina. Ex parte Winstead et al., 92 N. C., 703. The same principle is announced in Alabama. McQueen v. Turner, 91 Ala., 273; Kelly v. Deegan, 111 Ala., 152. As to securing the life tenant in the use of the part of the proceeds in which he has an interest, the North Carolina court follows the rule indicated by the remarks of Chief Justice Marshall, above quoted. The Alabama court, however, permits that part to be paid to him upon his executing a properly secured refunding bond conditioned to pay the principal to the remainderman upon the termination of his estate.

In the case of Clift v. Clift, 72 Texas, 144, Mrs. Clift had a one-sixth interest for her life in a town lot, and this court adjudged that the property should be sold, and that from the proceeds "there should be paid to Mrs. Clift a sum equal to a one-sixth interest for life in the proceeds of the land proper." Since the proceeds of the sale must be money, and the value of the use of the money is determined by the interest upon it, it follows that this recognizes the same right in the life tenant which was announced in the cases before cited, but lays down a different rule for securing that right. As to this last matter, the rule announced by this court may be questionable; but so far as we can now see, and so far as the writer of this opinion can recollect, that point was not mooted in that case.

Since we hold that the plaintiffs were not entitled absolutely to any part of the oil, that is to say, to the corpus of one-eighteenth interest, it follows that under the stipulation as to the judgment to be rendered, the judgment of the Court of Civil Appeals should be affirmed, and it is accordingly so ordered.

*Affirmed.*