MRS. ELISA BOND DAVIS V. GEORGE W. BOND ET AL.

No. 7792. Decided January 21, 1942.
(158 S. W., 2d Series, 297.)

*Hiram G. Brown,* of Mt. Pleasant, *F. D. Wear,* of Austin, and *Moore & Moore,* of Paris, for plaintiff in error.

There was no delivery of the deed. It was Mrs. Davis' intention that the deed should be a will and the notary with whom she intrusted its keeping had no authority to record or deliver same, and the fact that it was recorded and delivered to the grantee by the county clerk is without probative force. Hubbard v. Cox, 13 S. W. 170; Ford v. Hackel, 124 Texas 402, 77 S. W. (2d) 1043; 14 Tex. Jur., Deeds, page 821.

*J. A. Ward,* and *Sam Billingsley,* of Mt. Pleasant, for defendants in error.

Words and conduct of grantor evidencing her intention to render her deed presently operative and effectual so as to vest

the estate in the grantee is sufficient to constitute valid delivery without manual delivery of possession of the deed. Tyler v. Bauguss, 148 S. W. (2d) 912; Kincheloe v. Kincheloe, 152 S. W. (2d) 851.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Defendants in error, the surviving wife and children of J. B. Bond, deceased, filed this suit against plaintiff in error, Mrs. Elisa Bond Davis, and other defendants who made no contest, to recover the title to a lot in the town of Talco, in Titus County, upon which a producing oil well had been drilled, and to remove from their title clouds cast by recorded instruments, executed by Mrs. Davis and persons claiming under her, affecting the oil, gas and other minerals in the lot.

Defendants in error asserted title under a general warranty deed executed and acknowledged by plaintiff in error, joined by her husband, on November 23, 1923, by which the lot was conveyed to J. B. Bond, plaintiff in error's son, for a recited consideration of $100.00 in cash and the further consideration that "the said Elisa Davis shall retain possession, use and control of said property hereby conveyed during the remainder of her lifetime and that said J. B. Bond shall have no control, use or possession of said property until after the death of said Elisa Davis." The important question in the case is whether there was a delivery of this deed.

Four issues were submitted to the jury. The first issue, which was not answered, inquired whether Mrs. Davis, at the time she executed the deed to J. B. Bond, believed she was signing a will and not a deed. By its answers to the second and third issues the jury found that Mrs. Davis left the deed with W. H. Crawford (the notary public who prepared the deed and took the acknowledgments) with the instruction that it should be delivered to J. B. Bond upon her death. In answer to the fourth issue the jury found that J. B. Bond paid Mrs Davis no valuable consideration for the execution of the deed.

The trial court granted the motion of defendants in error, plaintiffs in that court, for judgment, holding that they were entitled to judgment notwithstanding the jury's failure to answer the first special issue, and rendered judgment in their favor for title to the lot, subject to the right of plaintiff in

error Mrs. Davis to occupy, use, enjoy and control the same during her life, and for the removal of the clouds cast upon their title by the instruments described in the petition. The judgment contains recitals of findings made by the trial court from "undisputed facts" that the deed to J. B. Bond, which reserved a life estate to Mrs. Davis, was duly delivered to W. H. Crawford, the notary public who took the acknowledgments; that, as found by the jury, Mrs. Davis instructed Crawford that the deed should not be delivered to J. B. Bond until her death; that the deed was delivered to J. B. Bond and by him filed for record on December 24, 1930, and was duly recorded; that J. B. Bond, joined by Mrs. Davis, on February 8, 1933, executed, acknowledged and delivered to H. B. Busby as lessee an oil and gas lease on the property, and that under the lease Busby and his assigns drilled a producing oil well; that the deed from Mrs. Davis and husband to J. B. Bond is valid and unambiguous; and that Mrs. Davis failed to prove fraud, accident, mutual mistake or undue influence in the execution, acknowledgment and delivery of the deed. The judgment of the trial court was affirmed by the Court of Civil Appeals. 141 S. W. (2d) 979.

Under the first three assignments in the application for the writ plaintiff in error makes the contention that the evidence raised an issue of fact as to whether there was a delivery of the deed and that the trial court and the Court of Civil Appeals erred in finding and in holding as a matter of law that there was a valid delivery of the deed. The exact point presented by plaintiff in error is that there is evidence that would support a finding by the jury that when Mrs. Davis left the deed with Crawford, the notary public who prepared it and took her acknowledgment, she did not intend that it should become presently operative as a conveyance.

Four persons were present when the deed was executed, acknowledged and left with the notary public. They were Mrs. Davis, the grantor, Mr. Davis, her husband, who joined in the execution of the deed, Mr. Crawford, the notary public and Mrs. Crawford, the notary public's wife. Two of them, Mr. Davis and Mr. Crawford, died before the suit was filed. The substance of the testimony of Mrs. Crawford, offered as a witness by defendants in error, is as follows: Mrs. Davis told Mr. Crawford that her son George and her daughter Nellie had homes and that she wanted to give the house and lot in Talco to her son Ben (J. B.) and that "she wanted it fixed so

George and Nellie could not get it." Mr. Crawford told her she could make a will but that she could tear the will up at any time if she changed her mind and that she could make a deed and that "when the deed was put on record it could not be torn up and that she couldn't change her mind after she signed that deed." She said she "wanted it fixed so it could not be changed or torn up" and that she "wanted the deed written." Mr. Crawford prepared the deed and read it to Mr. and Mrs. Davis; Mr. Davis signed the deed and went into the hall; Mrs. Davis made her mark and she and Mr. Crawford witnessed it. After Mr. Davis left the room Mr. Crawford explained the instrument to Mrs. Davis and she acknowledged it. Mrs. Davis told Mr. Crawford to keep the instrument until it was called for "or something to that effect." She did not hear Mrs. Davis give her husband any instructions to turn the deed over to Ben. Later the deed was taken from her home, when and by whom she did not know. She learned "after oil came to Talco" that the deed had been recorded.

The testimony of plaintiff in error Mrs. Davis with reference to what was said and done when the deed was executed, acknowledged and left with the notary public, Crawford, is in substance as follows: She went to see Mrs. Crawford and told him that George was gone and her daughter was gone, that she was afraid she would drop off and she wanted to make a will to Ben and "to give that will to Ben when I dropped off. From them (Mr. and Mrs. Crawford) to hold it until I drop off and then give it to my son." She left the paper there with Mr. and Mrs. Crawford, never went back to get it and never told Mr. Crawford or Mrs. Crawford to turn it over to anyone or to file it for record. The $100.00 recited in the deed as consideration was not paid to her.

The only conflict between the testimony of plaintiff in error and that of Mrs. Crawford is with respect to the instructions given by Mrs. Davis when she left the deed with Mr. Crawford. Plaintiff in error testified positively that when she left the instrument with Mr. Crawford she told him to hold it until she dropped off and then give it to her son, Ben. The testimony of Mrs. Crawford is that Mrs. Davis told Mr. Crawform to keep the instrument until it was called for "or something to that effect," and that she did not hear Mrs. Davis instruct Mr. Crawford to turn the deed over to Ben. If it can be said that plaintiff in error is not bound by her own positive testimony and that by Mrs. Crawford's somewhat vague tes-

timony an issue of fact was raised as to Mrs. Davis' intention in leaving the deed with Mr. Crawford, that issue was decided by the jury when, accepting Mrs. Davis' version rather than that of Mrs. Crawford, it found in answer to issues 2 and 3 that Mrs. Davis left the deed with W. H. Crawford with the instruction that it be delivered to J. B. Bond and that it was the instruction of Mrs. Davis that the deed should not be delivered to J. B. Bond until her death.

Plaintiff in error's assumption that the trial court found and that the Court of Civil Appeals held as a matter of law that there was a valid delivery of the deed when it was left with the notary public, rests upon a construction of the trial court's judgment as one rendered notwithstanding the entire verdict, that is, a judgment non obstante veredicto authorized by the first part of the proviso in Article 2211 of the Revised Civil Statutes of 1925 (as amended by Ch. 77, Acts Reg. Sess. 42nd Leg., 1931), to be rendered when a directed verdict would have been proper. We do not so construe the judgment. While it contains the recital that the court finds plaintiffs are entitled to judgment against the defendant "notwithstanding the verdict of the jury and notwithstanding the jury's failure to answer special issue No. 1," it cleary appears, in our opinion, from a consideration of the whole judgment and of plaintiffs' motion for judgment sustained by the court, that the judgment was rendered on the verdict, notwithstanding the jury's failure to answer the first special issue.

The trial court's action in disregarding the jury's failure to answer the first special issue was not error. The issue was: "Do you find from a preponderance of the evidence that when Mrs. Elisa Bond Davis executed the deed to J. B. Bond on the 23rd day of November, 1923, she thought and believed she was signing a will and not a deed?" An affirmative answer to the issue could not have served as a basis for the rendition of judgment. The instrument was a general warranty deed granting and conveying the property to J. B. Bond, with reservation by the grantor of possession, use and control during the remainder of her lifetime. The mere belief of the grantor that the legal effect or meaning of the terms and provisions of the instrument was other than what it plainly was could not vary the terms or provisions or avoid the effect of the deed. There is no suggestion in the record that Mrs. Davis was caused or induced to execute the deed by misrepresentation or fraud. No attempt was made to impeach the notary's certificate that the

deed was fully explained to Mrs. Davis and that she acknowledged it to be her act and deed and declared she had willingly signed the same, etc. The issue relates to the meaning and effect of the terms and provisions of the instrument and not to the question of delivery.

■ According to her testimony and the findings of the jury, plaintiff in error, after she had executed and acknowledged the deed, left it with W. H. Crawford with the instruction that he deliver it to J. B. Bond, the grantee, upon her death. In this State it is held that the legal effect of such execution and disposition of a deed by the grantor is to invest the grantee presently with title to the land conveyed, the right of possession and enjoyment, however, being postponed until the grantor's death. As said by Justice Dibrell in Henry v. Phillips, the grantor's deed executed and delivered to a third person with such direction has "precisely the same effect as if he had made and delivered the deed to the grantees, conveying to them the fee, reserving to himself in the deed the use and enjoyment of the land for and during his natural life." Henry v. Phillips, 105 Texas 459, 463, 151 S. W. 533; Griffis v. Payne, 92 Texas 293,, 47 S. W. 973; Earl v. Mundy, 227 S. W. 970 (application for writ of error refused); McKnight v. Reed, 71 S. W. 318. The courts of other states adhere to the same rule. It is thus stated, with citation of many authorities, in 26 C. J. S., pp. 247-248, Sec. 46:

"The delivery of a deed by the grantor to a third person to be held by him and delivered to the grantee on the grantor's death will operate as a valid delivery, where there is no reservation on the part of the latter of any control over the instrument, and under such circumstances it is usually held that the deed takes effect from the first delivery."

See also Note 52 A. L. R., pp. 1222-1246.

The jury found that Mrs. Davis left the deed with W. H. Crawford, with the instruction that it be delivered to J. B. Bond when she died. Mrs. Davis testified that she told Mr. Crawford to hold the instrument until she dropped off and then to give it to her son, that she left it with Mr. and Mrs. Crawford, never went back to get it, and never told Mr. Crawford or Mrs. Crawford to turn it over to anyone or to file it for record. Thus her own testimony as to what she said and did negatives the existence of a reservation by her of control over

the instrument, and we think very clearly shows an intention on her part to place the deed beyond her control and to divest herself of power over the operation of it as a binding instrument. This conclusion as to Mrs. Davis' intention is supported also by the uncontradicted testimony of Mrs. Crawford that Mrs. Davis told Mr. Crawford that she "wanted it fixed so it could not be changed or torn up" and that "she wanted the deed written," after Mr. Crawford had explained to her that a will could be torn up whenever she changed her mind but that "when the deed was put on record it could not be torn up and that she could not change her mind after she signed that deed." Mrs. Davis did not deny that she had conversation with Mr. Crawford as related by Mrs. Crawford, the extent of her testimony about the conversation with Mr. Crawford as to the nature of the instrument to be prepared being that she went to Mr. Crawford and told him she wanted to make a will to Ben and told him to hold it until she dropped off and then give it to her son.

The fourth assignment of error presents the proposition that a deed delivered to a third person to await the grantor's death does not at the time of its delivery convey title to the grantee with reservation of a life estate in the grantor, but that on the contrary a deed so delivered operates to give the grantee only an executory interest or an estate to commence in the future, leaving the fee in the grantor. The proposition is followed by persuasive argument and is supported by authorities, but to sustain it would be to depart from the rule hereinbefore stated, long established by the decisions in this State and at least as well supported in principle and reason as is the contrary rule advanced by the proposition.

■ The court did not err in sustaining objections made by defendants in error to two questions propounded to plaintiff in error Mrs. Davis. The two questions were as follows: "Was it your intention at that time to sign a paper that would give the property or any part of it to Ben's children if Ben should die before you did?" "Was it your intention and purpose when and after you signed that paper to put it beyond your control to change it if Ben should die before you did?" The bills of exception state that Mrs. Davis would have answered "No" to the first question and that to the second she would have answered "Of course she would have changed it had Ben Bond died before she did."

The argument made by plaintiff in error in support of the admissibility of the evidence is that it has reference to the intention with which Mrs. Davis handed the deed to the notary public and is therefore material and competent on the question of delivery of the deed.

The substance of the excluded testimnoy is that the witness Mrs. Davis, plaintiff in error, intended that the deed signed, acknowledged and delivered by her should not have the effect of giving the property to the grantee's children if he should die before she died and that she did not intend *to sign* a paper that she could not change if the grantee should die before her death. Thus the proferred evidence relates to the legal effect of the deed or of the language contained in it rather than to the intention with which Mrs. Davis handed the deed to the notary public, and the question of its admissibility is ruled by Lott v. Kaiser, 61 Texas 666, Russell v. Russell, 132 Texas 73, 120 S. W. (2d) 993, and other similar cases. In Lott v. Kaiser it is said that "The deed is conclusively presumed, in the absence of accident, mistake or fraud, to use language which, when unambiguous, truly evidences the intention of the grantor." It was held in that case that a grantor, knowing the contents and legal effect of the deed, cannot, in the absence of fraud, avoid its effect by showing by parol that he intended the deed to convey a different estate. Russell v. Russell holds that parol proof is inadmissible when it "has the effect of limiting, qualifying or imposing a condition upon the estate conveyed." The unambiguous language of the deed executed by Mrs. Davis and delivered by her to the notary public evidenced her intention to invest the grantee, Ben Bond, with the fee title to the land, subject only to her right to use, enjoy and control it during her lifetime. Testimony of an intention that the deed should convey only an estate or interest that would not descend to the grantee's heirs in the event of his death before the grantor's death is in contradiction of the clear import of the conveyance. The answer that the witness would have made to the second question is incompetent for the further reason that it is evidence of a secret intention on the part of the grantor not to be bound by the duly executed conveyance or of a purpose to undertake to avoid its legal effect by changing it after its execution and delivery.

The Court of Civil Appeals correctly approved that part of the trial court's judgment which awarded to defendants in error the proceeds received and to be received from the one-

eighth royalty reserved in the oil and gas lease executed by plaintiff in error and J. B. Bond, with provision that the proceeds from the royalty should be held by the receiver and invested under the orders of the court and the income from the investment delivered to plaintiff in error during her life. Swayne v. Lone Acre Oil Co., 98 Texas 597, 86 S. W. 740, 69 L. R. A. 986.

Relying upon a statement in the opinion in the Swayne case that at common law conventional life estates, or those created by contract, were not impeachable for waste unless expressly made so by the conveyance, plaintiff in error takes the position that since (if there was an effective delivery of the deed) she is a conventional life tenant rather than a legal life tenant, as was the tenant in the Swayne case, she is entitled to the royalties during her lifetime. The old common law rule is correctly stated in the Swayne case but, as pointed out in the opinion of the Court of Civil Appeals in this case, that rule was changed by statutes enacted several centuries before the common law was adopted as the rule of decisions in this State, which statutes made conventional as well as legal life estates impeachable for waste, and the common law liability for waste as extended by the early statutes obtains in most of the states. 27 R. C. L., p. 1032, Sec. 21; 21 C. J. p. 948, Sec. 87; "Fee Simple Ownership of Oil and Gas in Texas" by A. W. Walker, Jr., 6 Texas Law Review, pp. 125, 142-143; "Rights of a Life Tenant in Production and Use of Oil and Gas" by Clarence A. Guittard, 4 Texas Bar Journal, pp. 265 and following. Summers says in substance, citing many authorities, that tenants for life or years, whether created by common law, by statute, by deed, devise or contract, are under a duty not to take oil or gas, as against the remainderman or reversioner. Summers' Law of Oil and Gas (Perm. Ed.) Vol. 1, pp. 86-88, Sec. 33. Tiffany announces the same rule as applicable generally to all tenants for life or years. Tiffany's Law of Real Property (3d Ed.) Vol. 2, pp. 634-635, Sec. 633. See also Note 43 A. L. R. pp. 811-819.

In view of the foregoing authorities and the value of a uniform rule applicable both to life estates created by contract and to those created by operation of law, and because the taking of oil and gas is an injury to the inheritance, we conclude that the trial court did not err in awarding to defendants in error the proceeds from the royalty reserved and requiring

their investment and the payment to plaintiff in error of the income therefrom during her lifetime.

It is important to observe that the land "had not been devoted to mining purposes" at the time of the creation of the tenancy. The oil and gas lease was executed and the well was drilled after the delivery to W. H. Crawford of the deed which conveyed the lot to J. B. Bond and reserved a life estate to plaintiff in error.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 21, 1942.