Joyce Winnette KEMP et al., Appellants,

v.

Horace O. HUGHES et al., Appellees.

No. 5057.

Court of Civil Appeals of Texas, Eastland.

Sept. 1, 1977.

Supplemental Opinion Sept. 11, 1977.

Ross Hemphill, McCulloch, Ray, Trotti, Hemphill & Meadows, and Donald J. Hahn, Jr., Dallas, for appellants.

Gene L. Dulaney, Lealand W. Greene, Snyder, for appellees.

WALTER, Justice.

This is a receivership case. Horace O. Hughes, fourteen other plaintiffs, and one corporation filed suit against Joyce Winnette Kemp, a widow, and thirty-three other defendants seeking the appointment of a receiver to execute an oil and gas lease under Article 2320c of the Revised Civil Statutes of Texas. Some of the plaintiffs

own the leasehold estate in the minerals under the Northwest One-Fourth of Section 87 in Block 3 of the H. & G. N. Ry. Co. Survey in Scurry County, Texas down to the depth of 2500 feet. All the other plaintiffs own the leasehold estate in such minerals below the depth of 2500 feet. The court appointed a receiver to execute oil and gas leases on behalf of and covering the interest of all children both living and unborn of the eight children of James A. Clark, Sr. and Ida Mae Clark, to-wit:

"1. An oil and gas lease covering the interest of such children in the oil, gas, and other minerals in and under the Northwest One-Fourth (NW/4) of Section 87 in Block 3 of the H&GN Ry. Co. Survey in Scurry County, Texas, down to a depth of 2,500 feet from the surface, to Horace O. Hughes upon such terms which appear to such receiver to be the fairest and best that can be obtained.

2. An oil and gas lease covering the interest of such children in the oil, gas, and other minerals in and under the Northwest One-Fourth (NW/4) of Section 87 in Block 3 of the H&GN Ry. Co. Survey in Scurry County, Texas, below a depth of 2,500 feet from the surface, to Terra Resources, Inc. upon such terms which appear to such receiver to be the fairest and best that can be obtained."

Cecil J. Boren was appointed receiver. He took the oath, filed a bond, executed the oil and gas leases as provided in the order, and make a proper report to the court. The court has confirmed the receiver's action in leasing said property for all children both living and unborn of the eight children of Mr. and Mrs. Clark.

■ Eleven of the thirty-four defendants have appealed. The appellants observe the basic facts are undisputed. They set them out as follows:

"The basic facts are undisputed. James A. Clark, Sr., and his wife, Ida Mae Clark, both deceased, were the parents of eight children, all of whom are living. The eight children of James A. Clark, Sr., and Ida Mae Clark are the parents of nineteen children; and at the time of of trial eighteen of these grandchildren were adults, the eldest having reached the age of forty-six. The defendants in the trial court were the eight children and their spouses, the living grandchildren and the unborn and unknown grandchildren of James A. Clark, Sr., and Ida Mae Clark.

James A. Clark, Sr., predeceased Ida Mae Clark, and under his will his community one-half interest in the mineral interests in question was devised to his eight children for life with remainder to his childrens' surviving spouses and children. The will of James A. Clark, Sr., was admitted in evidence. The defendants are the owners of a one-half interest in the property in question under the following provisions of that will.

### Item 6

I give, bequeath and devise to each of my eight children, Joyce Winnette Kemp, Melba Alene Worley, Evelyn Faye Dorman, Blanton E. Clark, James A. Clark, Jr., William Donald Clark, Everett Clark and A. L. Clark, all of my community property interest save and except my oil, gas and minerals royalties and minerals interests as hereinafter provided for.

### Item 7

I give, bequeath, grant and devise a life estate in all of my oil, gas and minerals royalties and minerals interests to my eight children, Joyce Winnette Kemp, Melba Alene Worley, Evelyn Faye Dorman, Blanton E. Clark, James A. Clark, Jr., William Donald Clark, Everette Clark and A. L. Clark, share and share alike.

### Item 8

In the event of the death of any one or more of the above named children, then I direct that their spouse surviving them at the time of their death shall receive a one-third of the monies paid on royalty owned by the deceased child at the time of its death so long as the said spouse shall live. When the said spouse shall die, the above described one-third royalty interest shall pass

and be inherited the same as the two-third interest of the deceased child or children.

### Item 9

I direct at the death of each of my above named eight children, the fee title to all of the oil, gas and minerals owned by me at the time of my death shall pass to and vest in his or her respective natural child or children, share and share alike, subject to the life estate in my said child's or children's surviving spouse if there by any.

After the death of James A. Clark, Sr., Ida Mae Clark conveyed an undivided eight-ninths (⅞) of her one-half interest in the land in question to her eight children. Ida Mae Clark and all eight children thereafter executed the oil and gas leases under which the appellees derived their interests as lessees. The appellees, therefore, are (1) the lessees of the life tenants with respect to the one-half interest of James A. Clark, Sr., and (2) the lessees of the owners of the full fee title to the other one-half interest."

Section 1 of Article 2320c reads, in part, as follows:

"Section 1. Where lands or any estate therein are subject to contingent future interests, legal or equitable, whether arising by way of remainder, reversion, possibility of reverter, executory devise, upon the happening of a condition subsequent, or otherwise, and it is made to appear that such lands or estate are liable to drainage of oil, gas and other minerals, or either of them, or that lease thereof for oil, gas and mineral development and the safe and proper investment of the proceeds will inure to the benefit and advantage of the persons entitled thereto, or that it is otherwise necessary for the conservation, preservation or protection of the property or estate or of any present or contingent or future interest therein, that such lands or estate be leased for the production of oil, gas and other minerals, or either of them, upon application of any person having a vested, contingent, or possible interest in said lands or estate,

any District Court of the county in which the lands or a part thereof lie shall have power, pending the happening of the contingency and the vesting of such future interest, to appoint a receiver . . . ."

The following portion of Section 1 of Article 2320c is applicable to this proceeding:

" . . . or that lease thereof for oil, gas and mineral development and the safe and proper investment of the proceeds will inure to the benefit and advantage of the persons entitled thereto, or that it is otherwise necessary for the conservation, preservation or protection of the property or estate or of any present or contingent or future interest therein, that such lands or estate be leased for the production of oil, gas and other minerals, or either of them, . . . ."

The appellants say:

" . . . The appellees, therefore, are (1) the lessees of the life tenants with respect to the one-half interest of James A. Clark, Sr., and (2) the lessees of the owners of the full fee title to the other one-half interest."

Ida Mae Clark's one-half community interest in said NW 1/4 of Section 87 is not involved in this proceeding. James A. Clark, Sr.'s one-half community interest in the property is involved because of the provisions in his will creating a life estate in the minerals in controversy in his eight children with remainder to the natural child or children of his eight children.

Appellants contend there was no evidence and insufficient evidence to support the court's appointment of a receiver under Article 2320c.

We hold Mr. Clark's will, the evidence of Horace O. Hughes and Edwin Soles, and the admissible legal opinion evidence from Dan Cotton and Royce Adkins constitute some evidence of probative force and support the appointment of a receiver.

We have considered all the evidence and find it sufficient to support the judgment. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

We hold the appellants have not discharged their burden of showing the court abused its discretion by appointing a receiver.

The order contains the following:

"It is further ORDERED that such receiver, when he has made such leases, shall make due report thereof to this Court for confirmation. It is further ORDERED that said receiver shall receive the bonuses, delay rentals, royalties, and other benefits which may be payable to him under said leases and shall hold and invest the same under direction of this Court for the benefit of the persons entitled thereto, or who may become entitled thereto, according to their respective rights and interest."

Appellants say:

" . . . As long as each of the eight children is alive, he or she will be entitled to his or her share of the royalty . . "

They cite no authority in support of this statement. The appellees say:

"Appellees are interested only in getting leases from the receiver, on behalf of all of the remaindermen, so that they will have complete 100% interest leasehold estates, and Appellees are not concerned with how the proceeds from said leases are treated or distributed. Therefore, Appellees have not argued these Points of Error, and have no objection to the trial court's order being modified to limit the authority of the receiver to the execution and delivery of the proper leases so that the receiver will not receive, hold, or invest delay rentals or royalties."

In Woodward, *The Open Mine Doctrine in Oil and Gas Cases*, 35 Texas L.Rev. 538 (1957), we find the following:

"As a general proposition it seems to be accepted that neither a life tenant nor a remainderman can alone execute a valid mineral lease without the joinder of the other . . . "

43 A.L.R. 811 (1922) and 16 Texas L.Rev. 420 (1938) are cited in support of such conclusion. In *Union Gas & Oil Co. v. Wiedemann Oil Co.*, 211 Ky. 361, 277 S.W. 323 (1924), the court said:

"Disposing of contention (a), it properly may be said that there is no reason why Sarah Collier and her husband jointly could not make a valid oil and gas lease to her undivided one-half interest in the land. *Ball v. Clark, etc.*, 150 Ky. 383, 150 S.W. 359. As to the other half interest, while neither the life tenant nor the remainderman could singly make a valid lease, they could jointly make such lease . . . "

In *Davis v. Bond*, 138 Tex. 206, 158 S.W.2d 297 (Tex.Com.App.1942, opinion adopted), the court said:

"The Court of Civil Appeals correctly approved that part of the trial court's judgment which awarded to defendants in error the proceeds received and to be received from the one-eighth royalty reserved in the oil and gas lease executed by plaintiff in error and J. B. Bond, with provision that the proceeds from the royalty should be held by the receiver and invested under the orders of the court and the income from the investment delivered to plaintiff in error during her life. *Swayne v. Lone Acre Oil Co.*, 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986, 8 Ann.Cas. 1117.

Relying upon a statement in the opinion in the *Swayne* case that at common law conventional life estates, or those created by contract, were not impeachable for waste unless expressly made so by the conveyance, plaintiff in error takes the position that since (if there was an effective delivery of the deed) she is a conventional life tenant rather than a legal life tenant, as was the tenant in the *Swayne* case, she is entitled to the royalties during her lifetime. The old common law rule is correctly stated in the *Swayne* case, but, as pointed out in the opinion of the Court of Civil Appeals in this case, that rule was changed by statutes enacted several centuries before the common law was adopted as the rule of decision in this state, which statutes made conventional as well as legal life estates impeachable for waste, and the common

law liability for waste as extended by the early statutes obtains in most of the states . . . "

■ At the time the eight children's life estate came into being, there was no production on the property and Mr. Clark had not executed an oil and gas lease which was in force at the time of his death. Therefore, the open mine doctrine in oil and gas cases would not be applicable.

In *Clyde v. Hamilton*, 414 S.W.2d 434 (Tex.1967), the court said:

"The general rule of property law is that a life tenant may not dispose of the corpus of the estate. It is to be preserved for the remaindermen. At common law, the life tenant was impeachable for waste, and he could not ordinarily open a new mine without the joinder of the remaindermen. In this state, minerals are part of the land, and royalties and bonuses are part of the consideration for the sale of the land. The royalties and bonuses, therefore, are corpus which is to be preserved for the remaindermen. The life tenant, however, is entitled to the interest or income derived from the investment of the royalties and bonus . . .

. . . . .

An exception to the rule that the life tenant is entitled to nothing but interest on the royalties and bonus is found in the 'open mine' doctrine. At common law, if mines or pits were open at the time the life estate began, it was not waste for the life tenant to continue digging for his own use; and the proceeds were regarded as a profit from the land. When the settlor of a trust or a testator had opened the mine, and he gave no directions as to the impounding or expenditure of the proceeds from the mine, the law presumed an intent that the life tenant could expend or dispose of them as the settlor or testator could. So the proceeds did not become part of the corpus to be preserved for the remaindermen. Royalties and bo-

nus, under these circumstances, belong to the life tenant . . . "

In *Moore v. Vines*, 474 S.W.2d 437 (Tex. 1971), the court said:

"The better view, in our opinion, is that the open mine doctrine is not applicable beyond the lease in existence at the time of the vesting of the life estate of Troy Vines, i. e., beyond the last leasing act of Ruby Vines. The rights of Troy Vines in such respect rested on this lease and expired upon its termination. The lease executed after the vesting of the life estate was not the equivalent of an open mine at such prior time. Troy Vines as life tenant was not authorized by the will of Ruby Vines to lease the land for mineral development nor was he given enjoyment of the proceeds from any such lease. Under these circumstances we are unable to attribute an intent to Ruby Vines that the land should continue to be leased for mineral development for the benefit of Troy Vines with a resulting diminishment in the value of the interest of the remaindermen. Cf. *Bergendahl v. Blanco Oil Co.*, 440 S.W.2d 81 (Tex.Civ.App.1969, writ ref. n.r.e.) and *Johnson v. Messer*, 437 S.W.2d 643 (Tex.Civ.App.1969, writ ref. n.r.e.)."

■ The bonus and royalty, if any, received by the receiver are a part of the corpus and he will preserve it for the remaindermen. The life tenants will be entitled to the interest or income derived from the investment of the bonus and royalty.

■ However, the delay rental are payable to the life tenants as they are considered rent. They do not depend on the production of oil or gas and do not exhaust the substance of the land. *Commissioner of Internal Revenue v. Wilson*, 76 F.2d 766 (5 Cir. 1935).

We have considered all of appellants' points and find no merit in them. They are overruled.

The order of the trial court is reformed by deleting the words, "delay rentals," and as reformed is affirmed.

## SUPPLEMENTAL OPINION

Appellants have filed a motion for rehearing seeking to have the judgment of the trial court reformed by a finding from this court that:

"Ida Mae Clark's one-half community interest in said NW 1/4 of Section 87 is not involved in this proceeding."

The motion is granted and we find Ida Mae Clark's one-half community interest in said NW 1/4 of Section 87 is not involved in this proceeding. The trial court's order is additionally reformed in this respect.