MITCHELL et al. v. MITCHELL et al.

No. 12223.

Court of Civil Appeals of Texas. Galveston.

Dec. 14, 1950.

Rehearing Denied and Motion to Appoint Guardian Ad Litem Granted Jan. 25, 1951.

Morris, Underwood & Oldham and Larry W. Morris, all of Houston, Bradford Pickett, of Liberty and Charles S. Pipkin, of Beaumont, for appellants.

R. E. Biggs, of Liberty, E. E. Davis, of Newton and C. B. Cain, of Liberty, for appellees.

CODY, Justice.

This suit was brought by Raymond Mitchell, a grandson of Aurelia Mitchell, as a class suit under Rule 42, Texas Rules of Civil Procedure, it being alleged in plaintiff's petition that Aurelia Mitchell had by her will created a testamentary trust, devising a life estate in an undivided one-half interest in certain land in Liberty County to all of her children, except one, and devising the share that would otherwise have gone to that one child to that child's children. And plaintiffs alleged that said testatrix provided that the trustees should distribute the remainder, after the termination of the life tenancies, to her surviving descendants. It was alleged by plaintiffs' petition that the remaindermen consisted of adults, minors, and children yet unborn, and plaintiffs estimate that the number of the remaindermen will total, upon the termination of the trust, not less than four hundred. The suit was brought to require the trustees to carry out the alleged terms of the will with respect to the testamentary trust, and to hold large sums of money received by said trustees as oil royalties intact, and to require said royalties to be accumulated for the benefit of the trust estate and to prevent the trustees from distributing said royalties to themselves and other children of the testatrix and to the children of the daughter of the testatrix who had been excluded.

The attorneys of plaintiffs intervened in the suit, but we deem it unnecessary to state the substance of the allegations of said intervenors, and we also deem it unnecessary to state the allegations of plaintiffs' supplemental petition.

The defendants, the trustees, answered, denying that they had wrongfully distributed the funds coming into their hands under the will of the testatrix and filed a sworn account showing all the money which had so come into their hands and showing how the same had been distributed. The defendants further alleged that the judgment in Cause No. 12,722 on the docket of the District Court of Liberty County had adjudicated the intention of testatrix in the use of the word "income" as used in her said will wherein she devised income to her said trustees in trust for her said children and the children of her excluded daughter, and alleged that the word "income" was used in said will to embrace all the oil royalties which had come into the hands of the trustees.

The court, trying the case without a jury, in effect denied all relief which plaintiffs and intervenors sought. Stated otherwise, the effect of the court's judgment was to hold that the word "income" as used in the will included oil royalties.

Appellants predicate their appeal upon a single point which reads: "Under the terms and provisions of the Will and Testamentary Trust of Aurelia Mitchell, oil royalties received by the Trustees of her Estate remained a part of the principal or corpus of her estate and were not income. Therefore such royalties were not subject to distribution to persons holding only a life estate in the income from the trust."

The will in question was executed by testatrix at Houston, on July 18, 1932, by her making her mark. We have attached an appendix to this opinion which shows a copy of such portions of the will as we deem here material. The primary question for decision, as stated by appellants, is the meaning of the word "income," as used in the will.

It is well settled in this State that where a life estate is given to a life tenant, with the remainder over to remaindermen, ordinarily the life tenant will be impeachable for waste, if he removes and appropriates minerals. Swayne v. Lone Acre Oil Co., 98 Tex. 597, 606, 86 S.W. 740, 69

L.R.A. 986, and 8 Ann.Cas. 1117. The reason for the rule is obvious. The life tenant owns the estate only for life, which is a lesser estate than the fee or inheritance which belongs to the remaindermen. So, ordinarily the royalties belong to the remaindermen, and must be held intact for the duration of the life estate, with the interest thereon going to the life tenant. The holding of the Supreme Court in the Swayne case was limited to statutory life estates, but it was later recognized by the Supreme Court in Davis v. Bond, 138 Tex. 206, 158 S.W.2d 297, that the common law rule of making the life tenant impeachable for waste also applied to conventional life estates. In the Bond case the court also noted, but neither adopted nor repudiated it, that some courts held that the rule also applied to life estates created by a will. And in the Bond case the Supreme Court was also careful to reaffirm the limitation of said common law rule,—that it did not apply to land which had been devoted to mining purposes at the time of the creation of the tenancy therein, 158 S.W.2d 302. This limitation had also been noted by the Supreme Court in Swayne v. Lone Acre Oil Company, supra. In the Swayne case it was noted also that in some jurisdictions it was held that, where the only value of the land involved was known, at the time the life estate was provided for or created, to consist only of minerals, the life tenant would have the right to mine, but the point was not before the court, and the court neither adopted nor rejected such doctrine.

In the case of Avis v. First National Bank, 141 Tex. 489, 174 S.W.2d 255, the principal question for determination was whether the will had empowered the testamentary trustee to make oil leases, and in that case, the Supreme Court noted in passing that the testamentary trustee had been given the power under the will there under consideration to sell, invest and reinvest, etc., and stated "An oil and gas lease executed by the trustee under the terms (of the will) would not be one executed in the interest of the life tenant. The substantive rights of the life tenant and the remaindermen would still be preserved. The royalty

would go to the remaindermen, and the interest on the royalty would go to the life tenant." 174 S.W.2d at page 259.

In this case, the judgment of the trial court was consistent only with the conclusion that the intention of the testatrix was to give the royalties to her children (and to the children of the daughter whom she had excluded for reasons she expressly gave). In other words, the trial court here held in effect that, as used in the will, "income" applied to royalties.

■■■ We held in Houston Bank and Trust Company v. Lansdowne, Tex.Civ. App., 201 S.W.2d 834, 837: "The cardinal rule of testamentary construction is to ascertain the intent of the testator and give it effect, and such intention, when ascertained, will control any arbitrary rule. * * *. The intention of a testator ' "must be ascertained from the meaning of the words in the instrument, and from those words alone. But as he may be supposed to have used language with reference to the situation in which he was placed, to the state of his family, his property, and other circumstances relating to himself individually, and to his affairs, the law admits extrinsic evidence of those facts and circumstances, to enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the particular facts in the case" '." (Authorities.)

The court here admitted extrinsic evidence to the following effect: That the land in question was the community property of testatrix and her husband at the time of her husband's death. It consists of a tract of 400 acres, 100 acres out of the west end thereof was leased to the Sun Oil Company during testatrix' life, the adjoining 200 acres was leased by her trustees after her death, and the remaining 100 acres have not been leased. That the husband devised his undivided half interest in the land to his wife for life, with remainder over to the ten surviving children of himself and testatrix, share and share alike. That the daughter, whom testatrix excluded from participation in the income from the Liberty County property, had

disposed of all of her interest in her father's estate, before the testatrix made the will here involved. It might be more accurate to say that testatrix had by her will excluded her said daughter from any direct participation in the income from said land, because she left the interest which would have gone to said daughter, to said daughter's children. The testatrix could not but have known that it would have been the part of unnatural children to stand by and see their mother in want. And except with respect to the Liberty County land, the said daughter was treated the same as the other daughters were treated by the will of testatrix.

The extrinsic evidence further showed that testatrix was an uneducated Negro, and that a codicil subsequently executed by her was denied probate because of failure to comply with necessary formalities; that she was old when she executed the will in 1932. Also, that the land was practically valueless within the knowledge of testatrix except for the production of oil, and that the one hundred acres out of the west end of the tract was leased to the Sun Oil Company by testatrix, and oil was being produced therefrom during her life. The testatrix died in 1940, and her children were then grandparents, and the inference is, in some instances, great-grandparents.

We have examined the judgment in the aforesaid Cause No. 12,722 wherein the court found that the trustees were authorized to lease the 200 acres which adjoined the one hundred acres under lease to the Sun Oil Company. We are unable to say that the judgment in said proceeding adjudicated that the word "income," as used in the will, was used to mean and include royalties. But it is clear that the draftsman of the petition upon which said judgment was based construed that such was the meaning of the will, and that such meaning was so clear that there was no need of any such construction to be submitted to the court. And one of the grounds set out in the petition in said suit for seeking to have the court to authorize the leasing of the 200 acres was to enable the trustees to distribute, under the pro-

748

visions of the will, income to the children, —and the possibility that "income" from the land did not necessarily include the royalties therefrom apparently never occurred to the pleader.

The testamentary trust is created by the second paragraph of the will, and said paragraph of the will is copied in toto in the appendix attached to this opinion. It will be noted that the trust is ill drawn,— among other things no express power was conferred upon the trustees to lease the land, whose only value consisted of its oil possibilities.

It will further be noted that, had Paragraph II of the will included only its first paragraph, that there could be no room to suppose that the word "income", as used therein, did not include the royalties.

As drafted, the second paragraph of Paragraph II, purports to be explanatory of the preceding paragraph of Paragraph II. It is in this paragraph that it is provided "the principal of the trust is to be kept intact and held in trust until the death of all my children * * *." This language is followed by the words "It is my desire, as far as possible, that this part of my estate be allowed to accumulate for the benefit of my grandchildren, and great grandchildren * * *." Whatever the language last quoted may mean, taken in its context, it is expressly subordinated to the following provision "*provided*, however, that after the payment of my debts, the income from said property shall be paid to my children and the children of (her excluded daughter) share and share alike, that is one share jointly to all of the children (of her excluded daughter) and one share to each of my children (except the excluded daughter)."

Thus the testatrix makes it unmistakably clear that it is her primary intention to provide for her children out of the *income* from the property.[1] It will be noted that testatrix does not provide that the income from said property shall be invest-

ed, and the interest thereon paid to "my" children. But, to the contrary, "the income from said property shall be paid to my children * * *." What the property yielded, what issued therefrom, testatrix clearly directed to be paid to her children. The language is clear and is subject to no other construction. Appellants, whether consciously and deliberately, admit this in the wording in which they clothe the last sentence of their point, namely, "Therefore such royalties were not subject to distribution to persons holding only a life estate in the income from the trust." Testatrix gave her children *no life estate in the income from the trust*. She expressly directed same to be paid to her children, not invested for their benefit during their life, and then to be paid to the remaindermen.

■ It would have been an unnatural will had the testatrix preferred her remote descendants, including unborn descendants, to her children. The most that can be said for the provision that the principal of the estate shall be held intact is that the testatrix made it clear that this did not include the "income" from the property, which was to be paid to her children. The controlling purpose of the will was to safeguard her children from parting with, or being parted from, the title to the property placed in trust. In ordinary parlance, income from producing oil property includes the royalties. Testatrix knew this, and had paid income tax thereon. We overrule appellants' point.

■ Many of the appellants for whose benefit this suit was brought presented a motion to have this appeal dismissed. The motion was ordered taken with the case. Such appellants as are sui juris have the right to have the appeal dismissed as to themselves. But the appeal cannot be dismissed as to those belonging to the class for whose benefit it was brought, who are minors, and who are yet unborn. It is so ordered.

Judgment affirmed.

[1]. We have noted that, as to the excluded daughter, this purpose was accomplished, at least in part, by leaving her share to her children.

APPENDIX

"The State of Texas ⎱ Know All Men By
County of Harris ⎰ These Presents:

"That I, Aurelia Mitchell, of the City of Houston, County of Harris, State of Texas, * * *.

\* \* \* \* \* \*

"II.

"I direct that all of my property in Liberty County of which I may die seized or possessed of, both real and personal, including oil and gas leases, be held in trust and I hereby give, devise and bequeath said above property in Liberty County to my sons, Leon Mitchell and Fuhr Mitchell as trustees for the benefit of the beneficiaries to be named hereinafter and on the terms and conditions as hereinafter set out, the income from said trust to be for the benefit of my children, Leon Mitchell, Fuhr Mitchell, Sostan Mitchell, Joe Mitchell, Lezina Prophet, Cornelius Mitchell, Willie Mitchell, Vick Mitchell, Alphonsine Cormier, Agnes King and my grandchildren by my daughter, Theresa Perkins, share and share alike.

"That is, each of my children except Theresa Perkins is to take one share each and the other share, which would otherwise go to my daughter, Theresa Perkins, is to go to the children of my daughter, Theresa Perkins, jointly, by name, Matthew Young, Abe Young, Charlie Moore, Johnnie Moore, Johnson Moore, W. T. Moore, and Mary Helen Moore, and at the death of my above named children and above named grandchildren, the income is to go for the benefit of my grandchildren, and great grandchildren; the principal of the trust to be kept intact and held in trust until the death of all of my children and until the death of all of the above named children of my daughter, Theresa Perkins, and until twenty-one (21) years after the death of the last of my children and/or until twenty-one (21) years after the death of the above named children of my daughter Theresa Perkins when said estate and property in Liberty County shall be divided among and shall be vested in the children, grand children, and 'great grand children of my children named in this will and the children and grand children of the children of my daughter, Theresa Perkins named in this will; the children and grand children and great grand children of each of my children to benefit share and share alike in whatever the share of their parent, grand parent, or great grand parent may be. It is my desire, as far as possible, that this part of my estate be allowed to accumulate for the benefit of my grand children and great grand children, provided, however, that after payment of my debts, the income from said property shall be paid to my children and the children of Theresa Perkins, share and share alike, that is, one share jointly to all of the children of Theresa Perkins, and one share to each of my children except Theresa Perkins. In case of the death of any of my children, the income which would have been paid to them shall be paid jointly to the children of said deceased child of mine, share and share alike.

"No child, grand child, or great-grandchild of mine shall be able to sell or otherwise anticipate or encumber his or her share.

"It is my will that my daughter Theresa Perkins, take nothing from this trust, but what she would take shall go to her children. I deliberately do this because my daughter, Theresa Perkins, unwisely sold her share of my beloved husband's estate, and on this account I take this action to protect her and her children from similar action. Instead, I give devise and bequeath to my daughter Theresa Perkins, the sum of One Hundred Dollars ($100.00).

\* \* \* \* \* \*

"IV.

"It is my will and desire and I hereby direct that the Trustees of this estate pay the share of the children of Theresa Perkins to the said children of Theresa Perkins, or to my daughter, Theresa Perkins, for the benefit of her said children, as in their judgment, they deem best, and a receipt from my daughter, Theresa Perkins, shall be sufficient to relieve the trustees of any responsibility for the amount so receipted for, and it is my desire that no guardianship proceedings or bond be required of her.

\* \* \* \* \* \*

750

## "VI.

"I give, devise and bequeath all the rest and the residue of my estate, both real and personal, which I may have any interest in of whatsoever consisting and wherever located, to have and to hold unto them forever, to my children, Leon Mitchell, Fuhr Mitchell, Sostan Mitchell, Joe Mitchell, Lezina Prophet, Agnes King, Cornelius Mitchell, Willis Mitchell, Vick Mitchell, Alphonsine Cormier, and Theresa Perkins, share and share alike. In the event that any or all of them predecease me, then the children of any or all of them shall take the share of the parents, share and share alike."

### On Motion for Rehearing and to Appoint Guardian Ad Litem

CODY, Justice.

Appellant Raymond Mitchell, who instituted this suit under Rule 42 as a class suit, has filed a motion to dismiss this appeal, and to make the judgment of affirmance final.

The attorneys of appellants in due time filed an answer, including a motion to have a guardian ad litem appointed to represent the appellants who are not sui juris, etc.

By filing this suit, and undertaking the representation of the members of a numerous class, said appellant undertook a trust, and is bound to faithfully represent the rights which he placed in issue, and the Court will not permit such trust to fail for want of trustee. The trustees are receiving something in excess of $150,000.00 a year. If this Court was in error in its ruling, even though such sum be divided into more than four hundred parts, each person whose rights were placed in issue has a substantial interest involved here.

■ Under the facts of this case, it would be improper to dismiss this appeal without prejudice to the rights of the appellants who are not sui juris, until they can determine if they desire, after they become sui juris, to bring suit. And it would be equally improper not to safeguard appellants' right to carry the case to the Supreme Court,—indeed, it would constitute error.

■ However, we think it improper not to permit said appellant to resign or withdraw from the representation of the parties belonging to the class, where this can be done without prejudice, and without inconvenience. And it is also improper to require appellants' counsel to represent a party who wishes not to litigate further.

■ The motion of appellants' counsel for the appointment of a guardian ad litem to take over the representation of the class in place of Raymond Mitchell, who has withdrawn, is granted. And the Honorable Larry Morris of appellants' counsel is appointed as such guardian ad litem. And in addition, and in conformity with the practice of courts of equity which will not permit a trust to fail for want of a trustee, we name the said Morris to be trustee with the power to conduct this litigation to a conclusion. We have taken into consideration that Raymond Mitchell was acting as representative of the class without compensation, and have concluded that the fee which should be paid to the said Morris should only be a nominal one and fix same at the sum of $50.00.

■ It is further ordered that this litigation proceed under its present style,—that is, without injection of the confusion which would ensue by expunging the name of Raymond Mitchell.

The appellants who remain parties to this appeal, acting through their attorneys of record, have duly filed and prosecuted their motion for rehearing. The same has been duly considered and is refused.