COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| MARIBEL F. GUTIERREZ, NICOLE D. GUTIERREZ, ASHLEY MARIE GUTIERREZ, OMAR HECTOR GUTIERREZ, JR., as Representatives of the Estate of OMAR GUTIERREZ, Deceased, HOMERO DAVID GUTIERREZ, and Intervenors: CAROLINE GUTIERREZ, HOMERO ALBERTO GUTIERREZ, and ROBERTO CARLOS GUTIERREZ, | § § § § § § § § | No. 08-21-00077-CV<br><br>Appeal from the<br><br>381st District Court<br><br>of Starr County, Texas<br><br>(TC# DC-10-566) |
| Appellants, | § | |
| v. | § | |
| ELVA GUTIERREZ, | § § | |
| Appellee. | § § | |

# **O P I N I O N**

This case involves a dispute over certain real property in Starr County, Texas (the Subject Property), which was bequeathed by a will and, at least for a time, held in a trust.[1] In the district court below, and on appeal, the parties[2] assert competing claims of title supremacy—stemming

---

[1] This case was transferred from the Fourth Court of Appeals of Texas, our sister court in San Antonio. We decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

[2] Because the parties share the same surname, we refer to each by their first names to distinguish between them, unless otherwise noted.

from a common source—that is, the will of Guadalupe Garcia de Gutierrez (the Guadalupe Will). As a group, Appellants[3] are descendants of, or related to descendants of, Homero Gutierrez, deceased, who was one of Guadalupe's four sons and a named beneficiary of a trust created by the Guadalupe Will (Collectively, the Descendants).

Appellee Elva Gutierrez is Homero's surviving spouse from his third marriage, who is not herself related to any of the Descendants. Elva claims Homero transferred his interest in the Subject Property to her during his lifetime by Warranty Deed; or, in the alternative, by leaving his entire estate to her by his will. However, after Homero's death, two of his sons from his previous marriage filed both a trespass-to-try-title and a declaratory-judgment action against Elva, seeking to determine whether Homero ever owned legal title to the Subject Property during his lifetime, separate and apart from the trust that was created for his benefit by his mother's will. Three other descendants from Homero's second marriage then intervened, aligning their claim with the other descendants. Responding, Elva entered a general denial and filed a counterclaim for her own declaratory judgment. Competing motions for summary judgment soon followed.

The trial court rendered summary judgment in favor of Elva, ordered that Descendants take nothing against her, and further declared that Elva owned the Subject Property. We affirm.

## I.      BACKGROUND

*Factual Background*

Homero's mother, Guadalupe Garcia de Gutierrez, died in 2003, having been predeceased by her husband, Alberto H. Gutierrez. She was survived by her four sons, listed here in birth-order:

---

[3] Appellants include Homero David (David) and Omar, the two adult children of Homero's first marriage to Yolanda, who were plaintiffs and counter-defendants in the initial pleading of the case in the court below. After Omar passed in February 2021, the Representative of the Estate of Omar Gutierrez, deceased, appeared as plaintiff and counter-defendant, along with Maribel Gutierrez, his surviving spouse, and his three children, Nicole D., Ashley Marie, and Omar, Jr. Additionally, the group of Descendants include Caroline, Homero A., and Roberto Carlos, who are the children of Homero's second marriage and the intervenors in the court below.

Alberto, Homero, Roberto, and Ricardo. Guadalupe had executed a will in 1991, which was probated in the probate court of Starr County. Under the terms of her will, Guadalupe bequeathed all her property into a testamentary trust, for the benefit of her husband,[4] if he survived her. However, because her husband had predeceased her, her will otherwise divided her property among her four sons as follows: an undivided one-fourth interest to Alberto; an undivided one-fourth interest to Ricardo; an undivided one-fourth interest in trust for the benefit of Roberto (the Roberto Trust); and an undivided one-fourth interest in trust for the benefit of Homero (the Homero Trust). While the four sons were primary beneficiaries under the Guadalupe Will—either individually or through their respective trusts—Guadalupe also provided for successor beneficiaries "in the event any of my beneficiaries shall predecease me or shall die during the term of any trusts herein created . . . ." Each son's children were named, per stirpes, as successor beneficiaries of their father's respective share of Guadalupe's estate.

Under the terms of the Guadalupe Will, Alberto and Ricardo were to serve as the trustees for the Roberto and Homero Trusts. The Guadalupe Will stated that the Roberto and Homero Trusts "shall continue for the lifetime of" Roberto and Homero. However, the trustees had the power—subject to certain limitations, which we will discuss below—to terminate any trust created under the Guadalupe Will by paying over and delivering the respective beneficiary's share of her estate.

All four sons survived Guadalupe by the requisite amount of time specified in her will to become beneficiaries.[5] Four years after Guadalupe's death, in 2007, the four brothers executed a

---

[4] Guadalupe's husband, if he had survived her, was only to be the income beneficiary of the trust and was not entitled to any part of the corpus.

[5] The Guadalupe Will stipulated that "[a] beneficiary hereunder will be considered to have predeceased me if such beneficiary shall have died prior to my death or within 60 days after my death or before this will is probated, whichever occurs earlier."

Partition Deed, which memorialized an agreement between them "as to how to distribute [Guadalupe's] Estate." Relevant to this case and under the Partition Deed, Homero received an interest in the Subject Property, which consisted of just over 277 acres in Starr County, Texas.[6] The Subject Property was described in the Partition Deed with reference to a survey, and was also described by metes and bounds. The outcome of this case depends primarily on whether Homero's interest in the Subject Property from the Partition Deed was a fee-simple interest—as Elva argues—or a life estate with the remainder interest vested in Homero's children—as the Descendants argue.

In 2008, Homero executed a will (the Homero Will) leaving all of his property to Elva, if she survived him. The record also contains a 2010 Warranty Deed from Homero that purports to transfer his interest in the Subject Property to Elva. The Warranty Deed described the Subject Property in the same way as the Partition Deed: by making reference to the same survey and using the same metes-and-bounds description. The Warranty Deed also made specific reference to the Partition Deed. Four months after he executed the Warranty Deed, Homero died on December 3, 2010. Two weeks later, Omar and David—Homero's two oldest children—initiated the underlying litigation.

*Procedural History*

Omar and David's latest pleading sought claims for relief against Elva: (1) for trespass-to-try title regarding the Subject Property; (2) for declaratory judgment that, at the time of Homero's death, title to the Subject Property was still held by the Homero Gutierrez Trust; (3) for declaratory judgment that the Warranty Deed was void; (4) for declaratory judgment revoking the Warranty Deed for failure of consideration and fraud; and (5) for declaratory judgment interpreting the

---

[6] The parties agree here that the Subject Property consists of an interest in the surface estate only, not the mineral estate.

4

Partition Deed. Related to these claims, they sought ancillary relief including attorney's fees under the Uniform Declaratory Judgments Act, as well as an injunction against any attempt by Elva to convey the Subject Property.[7] In Elva's latest pleading, she raised affirmative defenses and made a counterclaim for a declaration that Homero owned a fee simple interest in the Subject Property, and he conveyed that interest to her.

In May of 2017, Omar and David filed a traditional motion for partial summary judgment on their trespass-to-try-title claims, their declaratory-judgment claims, and Elva's claims, defenses, and counterclaim. The following exhibits were attached to their motion: (1) the Guadalupe Will; (2) the Homero Will; (3) the Warranty Deed between Homero and Elva; (4) the Partition Deed signed by the four brothers; (5) the marriage certificate between Homero and Yolanda; (6) Omar's birth certificate; (7) David's birth certificate; and (8) an affidavit of Omar. In the meantime, Homero's three younger children (Homero A., Roberto Carlos, and Caroline) intervened in the lawsuit, filing their pleading in October 2018. Over two years later, a suggestion of death was filed, informing the court that Omar Gutierrez died, on February 3, 2021. At that point, Maribel F. Gutierrez, his surviving spouse, and his three adult children, Nicole D. Gutierrez, Ashley M. Gutierrez, and Omar H. Gutierrez, Jr., entered their appearance as personal representatives of his estate.

In January of 2020, Elva filed a competing motion for summary judgment, combined as a traditional and no-evidence motion, in which she argued there was no evidence to support the claims against her, that evidence supported a take-nothing judgment on Appellants' claims, and that she was entitled to judgment on her counterclaim as a matter of law. The following new exhibits were attached to Elva's motion: (1) an affidavit of Alberto; (2) transcript excerpts from

---

[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

Elva's deposition in this case; (3) transcript excerpts from Alberto's deposition in this case; and (4) transcript excerpts from Omar's deposition in this case.

The trial court held a non-evidentiary hearing on the competing motions for summary judgment, receiving argument about the proper interpretation of the will executed by Guadalupe, the partition deed, and the warranty deed executed by Homero.[8] Counsel for the intervenor-descendants confirmed they were aligned with all other descendants for purposes of the motion for summary judgment. Afterwards, the trial court denied the Descendants' motion for summary judgment; granted Elva's motion for summary judgment on all claims asserted against her by plaintiffs and intervenors; granted Elva summary judgment on her declaratory-judgment action; and, based on requests for declaratory relief, the trial court further declared that Homero acquired a fee simple interest in the Subject Property during his lifetime, and he subsequently conveyed and vested that property to Elva. The court rendered judgment in favor of Elva, and ordered plaintiffs, intervenors, and any unknown heirs of Homero, take nothing against Elva on their claims. The judgment further stated that all relief not otherwise granted was denied, that it was a final judgment, and that it disposed of all claims and all parties.

Omar and David—along with the intervenors—later moved to correct the final judgment and for new trial. The trial court denied those motions by written order. This appeal followed.

## II.    DISCUSSION

Appellants raise eleven issues on appeal challenging the trial court's grant of summary judgment.[9] We first address the issues related to the trial court's granting of Elva's motion for

---

[8] The parties agreed the trial court had jurisdiction to interpret the Guadalupe Will because it was part of the chain of title and pertinent to the disputed claims.

[9] In their first and second issues, Appellants argue the trial court erred in granting final summary judgment for Elva on Appellants' claim for attorney's fees. In their third issue, the Appellants argue the trial court erred in overruling a special exception they raised in response to Elva's Motion for Summary Judgment. In their fourth issue, the Appellants argue the trial court erred in granting the no-evidence portion of Elva's motion for summary judgment. In their fifth

summary judgment as to the Descendant's trespass-to-try-title claims against her. We do not reach Appellants other issues because they were either not properly briefed or not necessary to dispose of this appeal. *See* TEX. R. APP. P. 38.1, 47.1.

## A. Standards of review

We review a summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). A party may move for both a traditional and a no-evidence summary judgment at the same time. *Stierwalt v. FFE Transp. Servs., Inc.*, 499 S.W.3d 181, 194 (Tex. App.—El Paso 2016, no pet.); *see also* TEX. R. CIV. P. 166a(c), (i). When a party does so, as happened here, we first review the summary judgment under the no-evidence standard of Rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the no-evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See id.*

### 1. No-evidence motions for summary judgment

In a no-evidence summary judgment motion, the defendant alleges that adequate time for discovery has passed, and the plaintiff has failed to produce any evidence to support one or more essential elements of a claim for which the plaintiff would bear the burden of proof at trial. TEX. R. CIV. P. 166a(i); *KCM Fin. LLC*, 457 S.W.3d at 79. We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once a no-evidence motion is filed, the burden shifts to the nonmoving party to present evidence that raises a genuine issue of

issue, the Appellants argue the trial court erred in granting the traditional portion of Elva's Motion for Summary Judgment. In their sixth, seventh, and ninth issues, Appellants argue the trial court erred in granting final summary judgment for Elva on her counterclaim for declaratory relief because the proper cause of action for deciding a land-title dispute is a trespass-to-try-title claim. In their eighth issue, Appellants argue the trial court erred in denying their Motion for Summary Judgment. In their tenth issue, the Appellants argue the trial court erred in incorporating the summary judgment order denying Appellants' motion for summary judgment and granting Elva's motion into its Final Summary Judgment. Finally, in their eleventh issue, Appellants argue the trial court erred in not granting their Motion for Correction and Reform and for New Trial.

material fact as to each element specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant a no-evidence motion for summary judgment unless the respondent produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i). When reviewing a no-evidence summary judgment, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks*, 206 S.W.3d at 582.

### 2. Traditional motions for summary judgment

A defendant moving for traditional summary judgment must state the specific grounds for the motion and further show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KCM Fin. LLC*, 457 S.W.3d at 79. A defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of an affirmative defense is entitled to summary judgment. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). The non-moving party is not required to marshal all of its proof in response to a summary judgment motion, but it must present evidence that raises a genuine fact issue on the challenged elements. *Southwest Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

### 3. Competing motions for summary judgment

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). Neither party can prevail simply because the other party failed to carry its own burden on its own motion. *Nexstar Broad., Inc. v. Fidelity Commc'ns Co.*, 376 S.W.3d 377, 381 (Tex. App.—Dallas 2012, no pet.). When, as here, both parties move for

summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the evidence presented by both sides, determine all questions presented, and either affirm the judgment or render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

Here, Elva filed a hybrid motion for summary judgment challenging all of Appellants' claims against her on no-evidence and traditional grounds, and she argued she was entitled to summary judgment on her counterclaim seeking declaratory relief under the traditional standard. Appellants filed a competing motion for summary judgment on all their claims on traditional grounds only.

## B. Trespass to try title

Although both parties made requests to the trial court for declarations regarding the interpretation of instruments to include the Guadalupe Will, the Partition Deed, and the Warranty Deed, they also acknowledged in briefing here, and in the court below, that a trespass-to-try-title action is the proper cause of action for proving superior title to real property. We agree that a trespass-to-try-title action "is the method of determining title to lands . . . ." TEX. PROP. CODE ANN. § 22.01; *see, e.g.*, *Rogers v. Ricane Enters.*, 884 S.W.2d 763, 768 (Tex. 1994). Here, the Descendants pled such a claim, and then moved for a traditional summary judgment on that claim; while Elva moved for a competing summary judgment on the Descendants' claim, on no-evidence and traditional grounds. The trial court granted Elva's motion and denied the Descendants' motion. The Appellants challenge these rulings in three issues on appeal—their fourth, fifth, and eighth issues, respectively. We begin here.

The parties agree that prior to Guadalupe's death, she owned the Subject Property in fee simple. Her will and the subsequent Partition Deed are the two most important documents in our analysis because they determine what interest, if any, Homero obtained in the Subject Property as

9

reflected by these instruments. Then, we will discuss the Homero Will and the Warranty Deed from Homero to Elva.

## 1. The Guadalupe will

### a. Principles of will construction

The same rules of construction apply to both wills and trusts. *See In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied) (citing *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied)). It is our duty to ascertain the intent of the testator or grantor. *Id.* We must do so from the language used within the four corners of the instrument. *Id.*; *see Shriner's Hosp. for Crippled Children of Texas v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980) (applying the four-corners construction rule to a will). If the language of the instrument is unambiguous, there is no need to construe the instrument, because "it speaks for itself." *Eckels*, 111 S.W.3d at 694; *see Frost Nat'l Bank v. Newton*, 554 S.W.2d 149, 153 (Tex. 1977) ("No speculation or conjecture regarding the intent of the testatrix is permissible where, as here, the will is unambiguous, and we must construe the will based on the express language used therein."). We do not focus on what the grantor intended to write; but instead focus on the meaning of the words used. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). Under the guise of construing the language, we may not redraft a trust instrument to vary or add provisions to reach a presumed intent. *Id.*

Because we must determine the grantor's intent from the four corners of the instrument where possible, when the language is unambiguous, extrinsic evidence may not be introduced to show that the grantor intended something outside of the words used. *Id.* However, if "the meaning of the instrument is uncertain or 'reasonably susceptible to more than one meaning,' the instrument is ambiguous." *Eckels*, 111 S.W.3d at 694 (quoting *Myrick v. Moody*, 802 S.W.2d 735, 738 (Tex. App.—Houston [14th Dist.] 1990, writ denied)). Where an ambiguity exists within the

10

language used in the instrument, a court may admit extrinsic evidence to show the grantor's intent. *Id.* at 696; *see Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971) ("[W]e have stated on several occasions that where the intention of the testator is not clearly expressed by the language of the will, it may be found by looking to the provisions of the instrument as a whole and to the circumstances surrounding its execution.").

Finally, if possible, we must construe the instrument to give effect to all provisions so that none are rendered meaningless. *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d at 118 (citing *Eckels*, 111 S.W.3d at 694). And, in interpreting a trust, we look to the law as it existed at the time the trust was executed. *Id.* (citing *Hagaman v. Morgan*, 886 S.W.2d 398, 400 (Tex. App.—Dallas 1994, writ denied).

The Guadalupe Will was executed in 1991 and probated following her death. No party argues against the validity of the Guadalupe Will. By terms of the Will, two of Guadalupe's four sons, Alberto, and Ricardo, were to serve as co-executors of her estate. The Guadalupe Will consists of an introductory paragraph and twenty-one sections, each of which contains one or more paragraphs. We refer to each of the relevant sections by its respective roman numeral. After the first few sections— all of which contain recitals about a prior will, body disposition instructions, and the payment of debts—Sections IV and V place all of Guadalupe's separate property and half of her community property in trust with two of her sons: Alberto and Ricardo. Guadalupe's husband was to be the income beneficiary of the trust, and Section VI makes clear that no part of the trust corpus could, at any time or for any reason, be used or distributed for the benefit of her husband. This limitation is explicitly echoed in two other parts of the Guadalupe Will. Section VII describes monetary gifts Guadalupe and her husband made to Homero and Roberto, and stipulates that these gifts "be taken into consideration in determining the share of my estate to be given to or for the benefit of" Roberto or Homero.

11

Section VIII transitions to discussing what would happen to the estate when her husband died, or—as ultimately turned out to be true—upon Guadalupe's death if she was predeceased by her husband. In that case, the estate would be divided into four equal, undivided parts: one-fourth to Alberto, one-fourth to Ricardo, one-fourth to the Roberto Trust, and one-fourth to the Homero Trust. Alberto and Ricardo were also to serve as the co-trustees for the Roberto and Homero Trusts. Section IX stated that "[a] beneficiary hereunder will be considered to have predeceased me if such beneficiary shall have died prior to my death or within 60 days after my death or before this will is probated, whichever occurs earlier." Section X created a class of subsequent beneficiaries, if any beneficiary predeceased Guadalupe or died during the term of any trust created under her will. In such a case—and only in such a case—that beneficiary's share would "pass to and vest in the living issue, per stirpes, of such beneficiary or to the trustees if such living issue be under the age hereinafter specified." Section XI stated that the Roberto and Homero Trusts "shall continue for the lifetime[s]" of the respective beneficiaries.

Section XII contains multiple paragraphs with wide-ranging topics. First, it provides that if any subsequent beneficiary of a trust dies during a trust's term, the beneficiary's interest shall pass to such beneficiary's living issue, and if none, to the beneficiary's brothers and sisters, and if none, to "other beneficiaries specified in Paragraph IV[10] hereof." Next, it states that if any subsequent beneficiary is under the age of 25 when an interest in the estate vests in them, the interest shall be placed in trust until the beneficiary reaches the age of 25, at which time the trust would terminate and the beneficiary would be entitled to his or her share of the estate.

Next, Section XII begins enumerating trustee rights, powers, and responsibilities. Relevant

---

[10] Although not relevant to this case, it is unclear what is meant by "Paragraph IV" here. What we refer to as "Sections" in this opinion are the only things labeled by Roman numerals. Section IV does not mention beneficiaries, but states that Guadalupe's intention was to dispose of her one-half interest in her community property and all of her separate property.

to this case, the Guadalupe Will granted the trustees the power to pay all or any part of the income or the corpus—except to Guadalupe's husband—to or for the use of any beneficiary, including Homero and Roberto, "to provide for such beneficiary's reasonable support, welfare, education, illness, disability, or any other purpose which my Trustee determines to be appropriate, or may accumulate and add to the corpus of the trust estate all or any part of the income from the trust estate." "Except as otherwise limited by the provisions of [the Guadalupe Will], or by law," the trustees, in their sole discretion were granted the right "to make advancements out of the trust estate to or for the use of the beneficiary." The trustees had the right to determine whether any payment to a beneficiary would be classified as a distribution of income or corpus.

"Except as otherwise limited by the provisions of [the Guadalupe Will], or by law," the trustees were granted the right "at any time during the term of the trust, to terminate the trust as to any beneficiary by paying over and delivering to such beneficiary all of such beneficiary's part of the trust estate . . . ." The trustees were granted the power to decide which beneficiary shall receive what item or piece of property and the right to partition and divide the trust estate among the beneficiaries in any manner that the trustee determined to be fair and equitable.

Section XII went on to state that "[n]o beneficiary of a trust hereunder shall have a vested interest in the income or corpus of the trust herein created for such beneficiary until distribution is actually made to such beneficiary." It also stated that "[i]f any beneficiary shall die during the term of a trust created hereunder, the interest of such beneficiary shall not be considered to be a part of such beneficiary's estate." Finally, Section XII included the following clause: "Notwithstanding any other provision hereof, all trusts created hereunder shall terminate not later than 21 years after the date of the death of the last to die of all the beneficiaries and contingent beneficiaries named in this Will who are living at the time of my death." The remaining sections of the Guadalupe Will are not relevant to the dispute in this case, but discuss successor trustees, executors, trustee and

13

executor compensation, and other standard rights, powers, and privileges conferred on trustees by the Texas Trust Code.

### b. Analysis

The Descendants argue that because the term of the Homero Trust continued for his life, and because the Guadalupe Will stipulated that if Homero died during the term of the trust, his share passed to his issue, and thus, the co-trustees lacked authority to pass legal title to any of Guadalupe's property—including the Subject Property—to Homero individually. They argue that, to the extent Guadalupe's property was divided and partitioned during Homero's life, the co-trustees could only convey a life estate to Homero, individually, while leaving the continuing Homero Trust—and by extension, the Descendants—holding the remaining interest. In contrast, Elva argues that the powers granted to the co-trustees clearly gave them authority to distribute— as opposed to merely partition—property, in fee-simple, to Homero individually. We agree with Elva. Applying a holistic interpretation, the Homero Trust is not a life-estate trust, and any assertion that the co-trustees could only convey a life estate to Homero is unsupported by the terms of Guadalupe's Will.

Of note, a trust and a life estate are distinct and separate concepts. "A life estate is created by a deed or will where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life." *Tellez v. Rodriguez*, 612 S.W.3d 707, 710 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). "The life tenant owns the estate only for life, which is a lesser estate than the fee or inheritance which belongs to the remaindermen." *Id.* (quoting *Mitchell v. Mitchell*, 235 S.W.2d 744, 746 (Tex. App.—Galveston 1950), *rev'd on other grounds*, 244 S.W.2d 803 (1951)). In contrast, "[a] trust is created only if the settlor

14

manifests, in writing, an intention to create a trust." *Episcopal Diocese of Fort Worth v. Episcopal Church*, 602 S.W.3d 417, 433 (Tex. 2020); *see also* TEX. PROP. CODE ANN. § 112.004. The separation of legal and equitable estates in the trust property is the basic hallmark of the trust entity. *Perfect Union Lodge No. 10, A.F. & A.M., of San Antonio v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988); s*ee also Trust*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "trust" as "[t]he right, enforceable solely in equity, to the beneficial enjoyment of property to which another person holds the legal title").

"An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law." TEX. PROP. CODE ANN. § 5.001. However, the law does not require any specific words or formalities to create a life estate. *See Welch v. Straach*, 531 S.W.2d 319, 321 (Tex. 1975). Thus, a will creates a life estate "where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life." *Horrocks*, 294 S.W.3d at 755.

Here, the terms of Guadalupe's will evince no such intent; in fact, the will does not create any estates in land at all, it simply bequeaths all of Guadalupe's property, which included fee-simple interest in several pieces of real property, including the Subject Property, into four undivided shares: two belonging to two of her sons individually, and two shares going into separate trusts. Certainly, Guadalupe could have bequeathed life estates for any of her beneficiaries who were not her husband, but she did not. As a result of Section VIII of the Guadalupe Will, Alberto, Ricardo, and the Homero and Roberto trusts each owned an undivided one-quarter interest in the Subject Property in fee simple.

To the extent the Descendants argue the term of the Homero Trust, continuing for Homero's life, only created a life estate for Homero in the Subject Property, we also disagree.

15

Even where the stated term of a trust is described with what we commonly view as mandatory language, including terms such as "shall continue," as was used here, this language does not require the continuation of a trust where the trustees are otherwise granted express power to terminate trusts during their term. *See Kellner v. Texas Osage Co-op. Royalty Pool, Inc.*, 379 S.W.2d 359, 361–62 (Tex. App.—San Antonio 1964, writ ref'd n.r.e.). In *Kellner*, a trust contained a provision that it "shall continue for twenty-one years" after the death of the last survivor of certain named persons. *Id.* It also expressly allowed the trustees to form a corporation for the purpose of carrying on the purpose of the trust, transfer the trust assets to the corporation, and terminate the trust. *Id.* The San Antonio Court of Appeals held the two provisions did not conflict because the trust existing until the stated term became impossible after the trust had already terminated in a legal manner under the other provision at issue. *Id.* at 362. We hold similarly regarding this trust. The Homero Trust, along with the Roberto Trust, and Alberto and Ricardo, individually, owned an undivided one-quarter interest in all the properties in Guadalupe's estate in fee simple. The trustees had the power to terminate the trust as to any beneficiary "by paying over and delivering to such beneficiary all of such beneficiary's part of the trust estate[;]" to partition and divide the property amongst the beneficiaries; and the power to distribute any property within the Homero Trust to Homero during the term of the trust. Those powers do not conflict with the stated term of the Homero Trust. If the trustees chose to distribute the corpus of the Homero Trust to Homero, in accordance with the terms of the trust, it would then become impossible for the trust to continue for Homero's life.

We determine the stated term of the Homero Trust—that is, continuing for Homero's life— did not limit the trustees to only conveying a life estate to Homero in any property. A trust can accomplish essentially the same purpose of a life estate, by limiting the power of the trustees to dispose of the corpus of the trust; but simply establishing a trust's term as continuing for the life

16

of the beneficiary, by itself, does not do so under this record. Guadalupe clearly knew how to use a trust to accomplish a similar purpose as a life estate: she named her husband as the income beneficiary of a trust created for her property but made it explicitly clear that the trustees were not to convey the corpus of the trust to her husband. With the Homero Trust, she made no such limitation of interest.

To the extent the Descendants argue the term of the Homero Trust—for Homero's life—was a limiting provision on the power of the trustees to terminate the Homero Trust by paying over and delivering to Homero the contents of the trust, we disagree. We do note that the trustees' power at issue was introduced with the phrase, "[e]xcept as otherwise limited by the provisions of this Will, or by law . . . ." But as we continue to read the language, the same sentence makes reference to "any time during the term of the trust." The full text of the trustees' power is reproduced below:

> Except as otherwise limited by the provisions of this Will, or by law, my Trustee, in my Trustee's sole discretion, shall have the right at any time during the term of the trust, to terminate the trust as to any beneficiary by paying over and delivering to such beneficiary all of such beneficiary's part of the trust estate[.]

Among other possibilities as to what Guadalupe might have meant by such limiting provisions, she may have been referring to the limitation on paying any part of the corpus of the trust estate to her husband, if he had survived her life. In any case, when we construe all provisions together, as we must, harmonizing the language where possible and giving meaning to every word, we determine that by granting the trustees this power "at any time during the term of the trust," the stated term of the Homero trust could not be a limiting provision or exception to this power.

Finally, we must address the provision in the Guadalupe Will that states that the Homero Trust's share of Guadalupe's estate would pass to Homero's issue at his death if he were to predecease Guadalupe or die during the term of the Homero Trust. We determine that any interest this provision created in favor of Homero's Descendants was contingent; it would only vest if

Homero predeceased Guadalupe, or if he were to die during the term of the Homero Trust. We know Homero did not predecease Guadalupe. And although the stated term of the trust was for Homero's life, nonetheless, other provisions in the Guadalupe Will provided for early termination of the Homero Trust, in the sole discretion of the co-trustees, and such provision meant that Homero's Descendant's interest might never vest. *See Pickering v. Miles*, 477 S.W.2d 267, 270 (Tex. 1972) (holding that an interest is contingent if it is made subject to a condition incorporated into the gift).

Having determined that the trustees were empowered to terminate the Homero Trust, "at any time during the term of the trust," by paying over and delivering to such beneficiary "all of such beneficiary's part of the trust estate," including conveying fee-simple title to any of Guadalupe's property—including the Subject Property—to Homero, individually, and during his life, we must next determine whether in fact they exercised that authority.

## 2. The partition deed

The Partition Deed was signed in May of 2007 by all four brothers: Alberto, Ricardo, Homero, and Roberto. Alberto signed individually, in his capacity as co-trustee of the Roberto and Homero Trusts, and in his capacity as the Independent Executor of the Guadalupe Will. Ricardo signed individually and in his capacity as a co-trustee of the Roberto and Homero Trusts. Homero and Roberto signed the Partition Deed in their individual capacities. The Partition Deed stated it memorialized an agreement between the brothers "as to how to distribute [Guadalupe's] Estate[;]" and to that end, the properties described would "be vested as listed to the named Grantee exclusive of the remaining devisees listed in [the Guadalupe Will] . . . ." The first grantee listed is Homero, individually. He was granted, "as his separate property and estate . . . by themselves and to their heirs, personal representatives, successors, and assigns . . . free from any and all claims of the other party hereto . . ." the Subject Property, which was described by reference to a survey and by metes

18

and bounds. The Partition Deed went on to say that the described property, "together with all and singular the rights and appurtenances thereto in any wise belonging unto the said HOMERO GUTIERREZ, his heirs, personal representatives, and assigns forever; . . . ."

The next grantees listed were Alberto and Ricardo together. The same language was used to grant them, together, an interest in two different parcels of land not at issue in this case. Next, the Partition Deed indicated that Roberto had "previously received other good and valuable consideration from his parents and [Guadalupe's Estate] sufficient to execute and agree to this Partition Deed." Finally, the Partition Deed included the following paragraph:

> IT IS THE INTENTION OF ALL PARTIES TO THIS PARTITION DEED, THAT ONLY SURFACE ESTATES ARE BEING CONVEYED AND ARE NOT TO AFFECT ANY MINERAL ESTATES, SUCH AS URANIUM, OIL, GAS AND OTHER MINERALS OR BY-PRODUCTS THERE OF IN WHICH THEY HAVE AN INTEREST.

The Descendants argue the Partition Deed only granted Homero possession of the Subject Property, essentially granting him a life estate. They argue that legal title was vested in the Homero Trust, such that upon Homero's death in 2010, title passed to them according to the succession provisions in the Guadalupe Will. In support of their argument, the Descendants cite to *Lane v. Hughes*, a 1950 case from our sister court in Amarillo, for the following proposition:

> The effect of a partition is, not to confer title upon either of the partitioners, but to dissolve the tenancy in common and leave the title as it was before, except to locate such rights as the parties may have respectively in the distinct parts of the premises, and extinguish such rights in all other portions of the property.

228 S.W.2d 986, 988 (Tex. App.—Amarillo 1950, no writ). While this proposition may be true of a partition generally, it does not automatically follow that the brothers, in this instance, intended a partition only based on titling their instrument as a "Partition Deed." *See Luckel v. White*, 819 S.W.2d 459, 461–63 (Tex. 1991) (holding that, when interpreting a deed, the intent of the parties is to be determined from the express language found within the four corners of the document). As

19

Elva points out, there are numerous instances in Texas case law where a document titled "Partition Deed" was found to have both partitioned—in the traditional sense—and conveyed fee-simple title to property. *See, e.g.*, *Kardell v. Acker*, 492 S.W.3d 837, 839 (Tex. App.—San Antonio 2016, no pet.); *Walker v. Foss*, 930 S.W.2d 701, 708 (Tex. App.—San Antonio 1996, no writ); *Tiller v. Tiller*, 685 S.W.2d 456, 458 (Tex. App.—Austin 1985, no writ); *Moore v. Follett*, 11 S.W.2d 662, 667 (Tex. App.—Galveston 1928, writ dism'd w.o.j.).

Here, we look to the instrument itself for the parties' express intent: "WHEREAS the four beneficiaries of [Guadalupe's Will] have agreed among themselves as to how to distribute [Guadalupe's] Estate" and that the properties listed would "be vested as listed to the named Grantee exclusive of the remaining devisees listed in her Will . . . ."

First, we note the use of the word "distribute" in this clause. To "distribute" is defined as "to apportion; to divide among several" and "to deliver." *Distribute*, BLACK'S LAW DICTIONARY (10th ed. 2014). While this alone is not dispositive, the parties could have easily used the word "partition," in place of "distribute," if they intended to create a traditional partition in the sense described above. We also note the second half of this intent clause, which stated that these properties "will be vested as listed to the named Grantees exclusive of the remaining devisees listed in [Guadalupe's] Will . . . ." These words are notable, as because, while the Will lists the Homero and Ricardo Trusts as devisees, the Partition Deed explicitly states the properties vest in the Grantees themselves. And as we can see, Homero, individually, is the Grantee of the Subject Property, not his trust. Because we have already determined that the trustees were authorized to "terminate the trust as to any beneficiary by paying over and delivering to such beneficiary all of such beneficiary's part of the trust estate[,]" this grant to Homero in his individual capacity is consequential.

Moving to the portion of the Partition Deed that discusses the interest given to Homero, it

states that the Subject Property is given to Homero "as his separate property and estate, . . . by themselves and to their heirs, . . . free from any and all claims of the other party hereto." After describing the Subject Property, the Partition Deed again states that "the other parties, hereto, have GRANTED, RELEASED, CONFIRMED, AND CONVEYED, and by these presents DO HEREBY GRANT, RELEASE, CONFIRM, AND CONVEY unto the said HOMERO GUTIERREZ, the Property described above." We interpret each of these provisions as further evidence, within the four corners of the Partition Deed, that the parties intended to pass not only possession of the property, but also title.

As stated earlier, the Partition Deed includes an express statement of intent written in all capital letters. As stated, "only" the surface estates are being conveyed, thus limiting the scope of the conveyance. But we see no further language, and the Descendants have not pointed us to any, that otherwise describes or limits Homero's surface estate to a life estate. On the contrary, we have determined that every relevant provision within the document indicates an intent to grant fee-simple title in the surface estate. The Texas Property Code is instructive on our interpretation of a deed that is not expressly limited: "An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law." TEX. PROP. CODE ANN. § 5.001(a).

The Descendants' arguments depend on a determination that the trustees could grant nothing more than a life estate under the terms of the Guadalupe Will. Because we earlier determined they were authorized to distribute the corpus of the Homero Trust to Homero directly, the Descendants' argument is not supported by the text of the Will. Having determined that the trustees had the authority to convey a fee-simple interest in the Subject Property to Homero, and that they did so by way of the instrument titled "Partition Deed," now must next determine whether Homero conveyed the Subject Property to Elva, either during his life or through his will.

21

As a final note regarding the Partition Deed, the Descendants, in their brief on appeal, imply that their consent, as successor beneficiaries, would have been required before the trustees could convey fee simple title in the Subject Property to Homero. We disagree. As we stated above, the Descendants' interest in any property under the Guadalupe Will was contingent upon Homero passing away before Guadalupe—which he did not—or during the term of the Homero Trust. Because we have now determined that the trustees—pursuant to a legal and valid provision of the Guadalupe Will—terminated the Homero Trust by paying over the corpus of the trust to Homero, the Descendant's interest in the Subject Property, or any other property, never vested, and their consent was not necessary.

### 3. The warranty deed

Having determined that the trustees were empowered to convey fee simple title of the Subject Property to Homero during his life, and they exercised such authority through the Partition Deed, we next determine how Homero dealt with such interest during the remainder of his life. The record contains a Warranty Deed from Homero to Elva, dated August 11, 2010, which purports to convey his interest in the Subject Property to her. The document appears to be signed by Homero on August 17, 2010, and his signature is notarized. In passing, the Descendants bring two arguments in their briefing, contending the Warranty Deed fails as an instrument of conveyance: first, because Homero's signature on the Warranty Deed was forged; and second, for lack of consideration paid by Elva.

The Descendants provided the trial court with a transcript of Omar's testimony from a 2011 hearing on a motion for temporary injunction, wherein he testified the signature on the Warranty Deed was not his father's. However, Texas courts have held that an unsubstantiated allegation that a signature is forged does not create a fact issue or constitute evidence that the signature was forged. *See Ybarra v. Ameripro Funding, Inc.*, No. 01-17-00224-CV, 2018 WL 2976126, at *5–6

(Tex. App.—Houston [1st Dist.] June 14, 2018, pet. denied) (mem. op.); *Worthing v. Deutsche Bank Nat'l Tr. Co. for Agent Secs. Inc.*, 545 S.W.3d 127, 134–36 (Tex. App.—El Paso 2017, no pet.); *In re Estate of Price*, No. 04-05-00438-CV, 2006 WL 3725542, at *2 (Tex. App.—San Antonio Dec. 20, 2006, pet. denied) (mem. op.). And with respect to the alleged lack of consideration, Texas courts have held that a deed will effectuate a conveyance even when there has been a total failure of consideration. *See, e.g.*, *Munguia v. Paiz*, 404 S.W.2d 47, 48 (Tex. App.—San Antonio 1966, no writ) ("[A] deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration, and will, despite such failure, operate to convey title.").

Because Elva presented both the Warranty Deed and Homero's Will as alternative sources of proof reflecting she was conveyed title to the Subject Property, even if we otherwise determined the Descendants had raised a fact issue as to the validity of the Warranty Deed, that fact issue would not be material to the trial court's ultimate summary judgment ruling unless the Descendants also raised a fact issue challenging Elva's claim of title under the Homero Will.

### 4. The Homero will

In 2008, over two years before he died, Homero made a will that left all of his property to Elva. The Will is signed by Homero, as well as two witnesses, and all three signatures are notarized. The Descendants make no arguments on appeal against the validity of the Homero Will, or that it provided for his entire estate to pass to Elva. We have already determined that Homero owned a fee-simple interest in the Subject Property as a result of the Partition Deed. Therefore, even if we assumed the Descendants' arguments about the Warranty Deed were true, Homero owned a fee-simple interest in the Subject Property until his death, at which time it passed to Elva by his will.

We have determined, as a matter of law, that the trustees had the authority to convey fee-

23

simple title in the subject property to Homero, that they did so through the document titled "Partition Deed," and that—at the latest—Elva took title to the Subject Property at Homero's death by way of his will. As a result, Elva was entitled to summary judgment on Descendants' trespass-to-try-title claim against her.

## C. Declaratory-judgment claims by the descendants and Elva

We note—again—that both parties have argued before this Court and the court below that a trespass-to-try-title action, as opposed to a declaratory-judgment action, is the proper vehicle for settling this title dispute. Still, both parties, in their live pleadings in the trial court, as well as on appeal, argue they are entitled to summary judgment on their respective declaratory-judgment claims.

The Appellants sought the following declarations: (1) that Homero could not have conveyed the Subject Property because he only had a life estate and the Homero Trust held legal title; (2) that the Warranty Deed was void as a result of a forged signature; (3) that the Warranty Deed be cancelled and revoked for failure of consideration and fraud; and (4) the effect of the Partition Deed. Similarly, Elva sought a declaration that Homero had a fee-simple interest in the Subject Property and that it was lawfully conveyed to Elva.

Each of the declarations sought by both parties are subsumed by our analysis of the trespass-to-try-title claim. The only claim for declaratory relief on which the trial court granted summary judgment was Elva's. And the declaration Elva sought was that she owned the Subject Property in fee-simple, the same relief sought when a party makes a trespass-to-try-title claim. The trial court did not award attorney's fees to Elva in conjunction with its grant of summary judgment on her counterclaim. Given our analysis above, even assuming without deciding that the trial court erred in granting summary judgment on Elva's counterclaim, it would not change the outcome of this appeal: that Elva owns the Subject Property in fee-simple. Therefore, we do not reach

24

Appellants' sixth, seventh, and ninth issues, and as a result, they are overruled. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *see also Lance v. Robinson*, 543 S.W.3d 723, 740 (Tex. 2018).

Each of the Descendants' four claims for declaratory relief were properly disposed of on summary judgment under the above analysis and interpretation of the relevant documents. Because the Descendants' motion for summary judgment only sought summary judgment on their trespass-to-try-title and declaratory-judgment claims, the trial court did not err in denying their motion. Appellants' eighth issue is overruled.

For the reasons stated above, the trial court did not err in granting Elva's motion for summary judgment on the trespass-to-try-title claims and declaratory-judgment claims against her. Appellants' fourth and fifth issues are overruled.

## D. Other issues raised on appeal

In Appellants' first and second issues, they argue that the trial court erred in granting final summary judgment for Elva on their claim for attorney's fees[11] because Elva did not move for summary judgment on that claim. We do note that the trial court's order on summary judgment states that "the Court grants Elva Gutierrez summary judgment on all claims asserted against her by Plaintiffs and Intervenors . . . ." We agree with Appellants' assertion that a trial court cannot grant summary judgment on a claim not raised in a party's motion. However, we do not agree that the trial court did so here. The Appellants' claim for attorney's fees below was predicated upon, and ancillary to, its claims for declaratory judgment. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary

---

[11] The Descendant's request for attorney's fees was made pursuant to the Uniform Declaratory Judgments Act (UDJA), which the Appellants have argued here is not the appropriate cause of action for this dispute.

25

attorney's fees as are equitable and just."). An award of attorney's fees under section 37.009 is not dependent on a finding that the party "substantially prevailed." *See Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). However, the Declaratory Judgment Act "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Here, the Appellants do not challenge any award of attorney's fees; the trial court made no such award. Rather, they challenge the failure of the trial court to award attorney's fees to them. The trial court's final judgment stated that "[a]ll relief not granted herein is denied." This would have included Appellants' request for attorney's fees. As a result of the foregoing analysis, we cannot say that the trial court abused its discretion in denying Appellants' request for attorney's fees. Appellants' first and second issues are overruled.

In Appellants' third issue, they argue that the trial court erred in overruling their "Special Exception Number 2," which involved an objection to a perceived attempt by Elva to shift the burden of proof on her affirmative defense of bar by expiration of limitations. Then, Appellants revisit this issue in two sentences near the end of their brief, neither of which more fully explains their point of error nor otherwise provides citation to authority. In Appellants' tenth issue, they argue that the trial court erred in incorporating the summary judgment order denying Appellants' Motion for Summary Judgment into the Final Summary Judgment Order. Appellants never revisit this issue; instead, they include similar language about incorporation in each of their main headings. In Appellants' eleventh issue, they argue that the trial court erred in not granting their Motion for Correction and Reform of the Final Summary Judgment and for New Trial. They never revisit this issue.

26

Our authority to review issues in civil cases is constrained by the arguments that appear in the parties' briefs. *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998). Simply mentioning an issue in passing does not assign that issue for our review; "parties asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law supports their contentions." *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also* Tex. R. App. P. 38.1(i) (stating that the appellate brief "must contain a clear and concise argument for contentions made with appropriate citations to authorities and to the record"). "This requirement is not satisfied by merely uttering brief, conclusory statements unsupported by legal citations." *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Failure to comply with these briefing requirements results in the waiver of issues on appeal. *See id.* Accordingly, Appellants' third, tenth, and eleventh issues are waived.

## III. CONCLUSION

The trial court's final judgment is affirmed.

GINA M. PALAFOX, Justice

December 27, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.